## MacDONALD v. DU MAURIER et al.

### No. 390.

Circuit Court of Appeals, Second Circuit.

Aug. 18, 1944.

Charles S. Rosenschein, of New York City (Charles S. Rosenschein and Arthur Leonard Ross, both of New York City, and Herman Schner, of Brooklyn, N. Y., of counsel), for appellant.

Beekman & Bogue, of New York City (Benjamin H. Stern, Edward K. Hanlon, and Harry Buchman, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for infringement of copyright. The plaintiff, appellant here, wrote a story entitled "I Planned to Murder My Husband" which was published in Hearst's International Magazine for October 1924 and copyrighted. Later she expanded the story into a novel entitled "Blind Windows," published and copyrighted in 1927. In 1938 the appellee published a book entitled "Rebecca" of which Daphne DuMaurier (named as a defendant in the present action but not served with process) was the author. The other defendants, not parties to this appeal, had to do with the production and distribution of a motion picture entitled "Rebecca" based upon the book of the same name. The complaint charging infringement of the plaintiff's copyrighted story and novel was filed on September 15, 1941. There has been no trial of the action. After answering the complaint the appellee moved for judgment on the pleadings. In an opinion which admirably outlines the stories of the two books the district judge granted the motion. His unpublished opinion is appended hereto.

Because of the way the case came on—a motion for judgment on the pleadings—we must assume not only that the author of the book charged with infringing had access to the plaintiff's copyrighted works but also that she actually copied those parts common to both. Dellar v. Samuel Goldwyn, Inc., 2 Cir., 104 F.2d 661, 662; Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, 86. The complaint alleges that the "book 'Rebecca' is in large measure copied from" the plaintiff's story and novel. Upon motion for judgment on

the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723, this allegation must be accepted despite its denial in the appellee's answer. Hence we are forced to suppose that all common material in the two books was the result of copying by the author of "Rebecca." If so the only answer to the charge of tortious plagiarism must be that the common matter was either in the public domain or was so trifling as not to count. Judge Bondy's opinion sums up all, or at least the greater part, of the similarities which the plaintiff asserts to exist. Even though some of them may be far fetched, for example, the reference to trees looking like sentinels, so many remain that the common matter is not so trifling that it can be ignored. Consequently the question comes down to whether the author's borrowing, although substantial in amount, was a "fair use." That is always a troublesome question. In the case at bar the supposititious borrowings are not in the general outline of plot and character: in "ideas" as opposed to "expression." On the contrary they consist in a series of concrete incidents and details, and if in fact these were all borrowed from the plaintiff, we cannot properly hold that the common matter was outside the protection of the copyright law. That law indeed gives no monopoly of general ideas, but authors, most of all, will be jealous that this exception does not swallow all their rights.

In an infringement suit coming up in this way we believe that a judge unconsciously tends to make a summary judgment which disregards the concession of copying; when upon a reading of the two works it seems unlikely from their relative merits that the common matter could have been borrowed, the judge will hold, without quite saying so even to himself, that it was not borrowed. To do this is to deprive the plaintiff of his day in court; and that is the real vice of the procedure here adopted. It is quite true that if we permitted ourselves to judge from our own perusal of the books whether the author of "Rebecca" had used the plaintiff's literary material, we should have little doubt that she did not. But we know nothing about the author's access to

that material or about what evidence the plaintiff can produce in support of her assertion of copying; and both of those issues the appellee has conceded in the plaintiff's favor. Accepting that concession, as we must, we hold that it was error to dismiss the complaint.

This does not mean that the suit must necessarily go to trial. Upon a motion for summary judgment under Rule 56, supported by the author's deposition or perhaps even by her affidavit, it might be satisfactorily established that there was neither access nor copying. But a motion for judgment on the pleadings asks the court to determine the issue of infringement with these facts conceded. This precludes us from saying that "Rebecca"—even though we regard it as immeasurably superior to "Blind Windows"—could not have been borrowed in respect to the common material. While we agree that dispatch in litigation is highly desirable, it should not be pressed to the point where it shuts out an adequate examination of the merits. Little as we expect any other ultimate result than dismissal of the complaint, we think that it has been prematurely reached by a forbidden path.

Judgment reversed.

CLARK, Circuit Judge (dissenting).

I fear that an expression by this court of a preference for full and formal trial of plagiarism issues in Dellar v. Samuel Goldwyn, Inc., 2 Cir., 104 F.2d 661, 662—though the actual decision there supported the result reached below here[1]—is now being pressed into a rule of decision for this Circuit, which, with deference, I must conclude is as contrary to the provisions, as well as the spirit, of the new civil rules as it is admittedly opposed to the realities of authorship and of literary thievery. Procedure should be viewed simply as a means of doing justice, not as an end in itself or as something which requires vindication without respect to results; and the new rules were designed to afford not only speedy and efficient adjudication of actions on the merits, but also, wherever fair and possible, disposition of cases without

---

[1] In this case—as well as in Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83—the court held itself "in entire accord with the judge's finding that, even though the defendants took from this play all those matters in which the film resembles it, they were within their rights in doing so." What these cases were sent back for was decision of another issue, namely, whether the "continuity" or scenario of the movie presented in the record was actually a reasonably fair synopsis of the film.

the time and expense of trial. Of course, the common-law demurrer, too, was devised as a means of avoiding an unnecessary formal trial. Nevertheless, since it attacked only the statement found in the pleadings, it tended to exaggerate the importance of technical allegations which might conceal the merits. The civil rules, therefore, are insistent that the merits be brought out and that the pleadings themselves be kept properly subordinated to that necessity. That objective can, however, be achieved without undue insistence upon formal trials. Hence the rules, unlike all earlier procedural systems in this country or England, make the remedy of summary judgment available for all—not a selected few—civil actions,[2] with the obvious intent that the screening out of cases not appropriate for such disposition should be made by the parties and the trial judge in the light of the particular circumstances, rather than pursuant to an arbitrary general fiat.[3] Moreover, we in common with other circuits have interpreted Rules 12(b) and (c), read in connection with Rules 6(d), 43(e), and 56(e), as freely permitting the use of affidavits to make sure the real issues are before the court, just as Rule 56 itself allows summary judgment on the pleadings alone if the parties choose—a fair, desirable, and rational interpretation of the rules, which is made quite explicit in certain of the pending proposed amendments to the rules. Preliminary Draft of Proposed Amendments to Rules of Civil Procedure, May, 1944, pp. 17-25, 65-69, with notes and cases therein cited.

In short, plaintiff here had just as free choice as defendants whether to rely upon the pleadings and the literary products here in dispute which accompany them or to give more extensive information to the court. Since she chose to rest upon a purely formal allegation of copying, with no specification of actual access, an allegation which stands denied by the defendant book publisher's answer (the author not having been served or appearing), I think it is lifting one's self by one's bootstraps—and in the wrong

direction at that—to talk in terms of the old "admission by demurrer" and to say that copying here stands conceded. Actually we know it is not conceded; that issue is not now before us, and we should not consider it or bolster up our decision either way by reference to it. We should bear in mind, too, that the real issue now before us, illegal similarity of the writings, is in no sense a merely formal one presented only by the pleadings, but is necessarily the ultimate issue on the merits involving a comparison of the writings themselves.

Confining myself, therefore, to this issue, for my part I must consider it as bordering rather on the fantastic, as implying callousness towards, if not derision of, real literary talent and skill, to suggest that such trifling and coincidental similarities as a microscopic examination of the two books is thought to bring out here be considered to weigh at all against the sharp differences between them in all matters which really should count—viz., in intended objective and type of reader appeal, in fashioning of the plot and in its progression, in the conception and delineation of characters, in the climax of the story and denouement of the plot, and in the effectiveness and, certainly in part at least, in the literary skill with which the chosen objective is reached. And as to the plaintiff's earlier magazine story, that alone is hardly claimed to have been copied, as obviously it was not. In a manifest desire to state the case most fairly, Judge Bondy emphasized everything which could be said for the plaintiff—a process of selection which results in a perspective quite overfavorable to the plaintiff's claims. Even on his statement, however, I think the dissimilarity too obvious and too controlling to be disregarded, and our duty to reject the suggestion of theft as plain.

On the one hand, we have an attempted psychoanalytical study (in not too successful imitation of a recent vogue in novels) of a young girl through her childhood and down through her unsuccessful marriage to an older man previously married; as might

---

[2] 3 Moore's Federal Practice 3174, 3177; Clark, Summary Judgments, A. B. A. Jud. Adm. Monographs, Ser. A, No. 5.

[3] Not only because of this, but also because our own recent experience shows by actual count more cases disposed of by the decisive test of comparison of the two texts than by any other means, I do not feel justified in joining in the preference expressed in the Dellar case for the method of adjudication by formal trial. But I would not go to the opposite extreme of saying that adjudication on motion is generally desirable; for to me our experience actually demonstrates what the rules envisage, namely, that the particular circumstances of each case must control and that general admonitions are not to be relied upon.

be expected, the biography merely runs on without climax until the book closes sometime after the husband has died and as the heroine seemingly contemplates return to an earlier love. On the other hand, we have a superbly fashioned melodrama—told, it is true, by a second wife—of suspense and horror cleverly combined, wherein the hero's first wife is the villain and the denouement is sharp and unusual, leading directly to the close of the book, with the hero and heroine having lost their home in flames, but obviously about to live happily ever after. Second marriages are too common to erect so large a claim on so small a foundation. I believe the courts do a disservice to literature to encourage the harassment which such a trial means, with its obvious tendency to force settlement of the claim not because it is just, but because contesting it has become too costly or too inconvenient. Here we now compel this publisher to seek at least affidavits—and, to be quite safe, formal depositions—from witnesses as widely separated as England and Hollywood, California, with all the difficulties of present-day communication and travel, in order to reach an end which we confidently foresee and can quite as surely reach right now as later. I regret to see such a failure of procedural resources of the court, particularly when, as it seems to me, the intent of the procedural rules is quite to the contrary.