David F. MUSTO, Plaintiff,

v.

Nicholas MEYER, E. P. Dutton & Co., Inc., Ballantine Books, a division of Random House, Inc., and Universal Pictures, a division of Universal City Studios, Inc., Defendants.

No. 75 Civ. 6411.

United States District Court, S. D. New York.

June 24, 1977.

Michael J. Siris, New York City, for plaintiff.

Greenbaum, Wolff & Ernst, New York City, for defendants, Roger Bryant Hunting, Jeremy Nussbaum, Richard Paul Richman, New York City, of counsel.

## OPINION

BONSAL, District Judge.

As the late Sir Arthur Conan Doyle wrote in *The Yellow-Face,* which appears in *The Memoirs of Sherlock Holmes* published by Penguin Books, "[s]ave for the occasional use of cocaine he [Holmes] had no vices, and he only turned to the drug as a protest against the monotony of existence when cases were scanty and the papers uninteresting." This passage provides a backdrop for this lawsuit.

Plaintiff, David F. Musto ("Musto"), author of an article entitled "A Study in Cocaine: Sherlock Holmes and Sigmund Freud" which appeared in the April 1, 1968 edition of the *Journal of the American Medical Association* (volume 204, No. 1) (the "article") is suing the defendants for damages alleging that the defendants infringed upon his copyright by publishing, distributing and selling in 1974 a hard-cover and paperback edition of a book entitled *The Seven Per Cent Solution* (the "book"), and by making and producing a feature length film of the book known by the same name. The defendants include the editor of the book, Nicholas Meyer; the publisher of the hard-cover edition, E. P. Dutton & Co., Inc.; the publisher of the paperback edition, Ballantine Books; and the makers of the film, Universal Pictures. Musto alleges that a substantial portion of the book and film is copied from his article and that the writing and publishing of the book and the subsequent making of the motion picture infringes upon his copyright and is therefore actionable at law.

The defendants deny the allegations in the complaint and move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for an order dismissing the complaint for failure to state a cause of action upon which relief may be granted.

### General Background

Musto's article is a brief but interesting history of the use of cocaine in Europe and America in the 19th century. The article is highlighted by Musto's speculation, somewhat tongue-in-cheek on the use of cocaine by the fictional character Sherlock Holmes and by the famous psychiatrist Sigmund Freud. Musto suggests that Holmes may have been a heavy user of the drug and that his addiction led him to believe that Professor Moriarty, the alleged master criminal, was after him. Musto hypothesizes that Holmes' mysterious disappearance between 1891 and 1894, described in Sir Arthur Conan Doyle's *The Final Problem,* may have been for the reason that Holmes was being treated for his chronic overuse of cocaine, possibly by Freud. Musto concludes with an exposition of Freud's apparent fascination with and

**34**

study of the effects of cocaine, and the use of cocaine in America.

The book purports to be an edited version of a recently discovered manuscript written in 1939 by the late John H. Watson, M.D. the alleged biographer and friend of Holmes. The book opens with a scene in which Watson learns that his friend, Holmes, is suffering from overuse of the drug cocaine. In an effort to rid Holmes of his habit, Watson engages the services of Holmes' brother, Mycroft, to trick Holmes into pursuing the notorious Professor Moriarty to Vienna, Austria where Sigmund Freud can hopefully cure Holmes of his addiction. Once in Vienna, Freud cures Holmes of the habit by use of hypnosis and the two then embark upon a Holmesian adventure involving political intrigue that culminates in a high-speed train chase across the Bavarian countryside. At the end of the book, we are told that Holmes' antipathy for Professor Moriarty stems from the fact that Moriarty, as Holmes' mathematics tutor, carried the sad news to Holmes that Holmes' father had killed his mother because of an illicit love affair. The book has become a bestseller and is the subject of a motion picture.

Musto contends that Meyer, and by implication the other defendants, copied both literal and non-literal portions of his article and thus violated his copyright. After oral argument on defendants' motion for judgment on the pleadings, the Court directed Musto's attorney to submit a memorandum outlining in detail the alleged copying, and granted defendants' attorneys time to respond. Both parties have complied with the Court's directions. Since the parties have had ample opportunity to address themselves to the issues at hand and since the Court has been supplied with a copy of the article and the alleged infringing book, the Court, in its discretion, will consider defendants' motion for judgment on the pleadings as a motion for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(c).

*The Copyright Claims*

In a copyright infringement action the plaintiff must first prove ownership of the copyright and then copying by the defendant. *See* Nimmer, *The Law of Copyright § 141 (1976).* Generally speaking, a copyright registration certificate constitutes prima facie evidence of ownership. 17 U.S.C. § 209; *Edward B. Marks Music Corp. v. Wonnell,* 61 F.Supp. 722 (S.D.N.Y. 1945). Here, there does not appear to be any dispute between the parties that Musto is the owner of the copyright on the article.

Copying is generally established by proof of access by the defendant and substantial similarity between the works. Access is ordinarily defined as the opportunity to copy, *Detective Comics, Inc. v. Bruns Publications, Inc.,* 28 F.Supp. 399 (S.D.N.Y.1939), *modified,* 111 F.2d 432 (2d Cir. 1940) and, here again, there does not appear to be any dispute that Meyer had access to the article. In the book's acknowledgments, Meyer states that "[p]sychiatrist Dr. David F. Musto, in a brilliant essay published in *Journal of the American Medical Association* plausibly connected Holmes with Dr. Sigmund Freud through the all-important link of cocaine." Meyer also acknowledges that he incorporated into the book's plot the imaginative theories of other writers who have analyzed the works of Sir Arthur Conan Doyle and the exploits of his imaginary figure, Sherlock Holmes.

Substantial similarity, on the other hand, is a more difficult concept to define. *See* Nimmer, *supra* at § 143.1. Here, the parties vigorously contest the existence of substantial similarity between the two works.

*Substantial Similarity*

The Copyright Act does not protect against the borrowing of the ideas contained in a copyrighted work but only against the copying of the "expression of the idea" contained in such works. 17 U.S.C. § 1; *see Holmes v. Hurst,* 174 U.S. 82, 19 S.Ct. 606, 43 L.Ed. 904 (1899); *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Dymow v. Bolton,* 11 F.2d 690 (2d Cir. 1926); *MacDonald v. Du Maurier,* 144 F.2d 696 (2d Cir. 1944); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274

F.2d 487 (2d Cir. 1960); *Fuld v. National Broadcasting Company,* 390 F.Supp. 877 (S.D.N.Y.1975). While the distinction between an "idea" and "expression of an idea" is necessarily vague, *Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra,* 274 F.2d at 489, the courts over the years have developed approaches to the problem that have been commonly referred to as the "abstractions test," *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.), *cert. denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1930); *Burnett v. Lambino,* 204 F.Supp. 327 (S.D.N.Y.1962), and the so-called "pattern" test. *See* Nimmer, *supra* at § 143.11; *see also* Sorenson and Sorenson, *Re-examining the Traditional Legal Test of Literary Similarity: A Proposal for Content Analysis,* 37 Corn.L.Q. 638 (1952).

Here, Musto appears to rely on the "pattern" test in alleging that Meyer copied original and non-historical elements from his article. For instance, Musto contends that the following elements in his article reappear in the book: (1) the reading public had been misled by Sir Arthur Conan Doyle in *The Final Problem* as to what really happened to Holmes during his three-year absence in Central Europe; (2) Watson diagnosed Holmes in *The Final Problem* as suffering from cocaine induced paranoia; (3) Watson does not believe Holmes' "fantastic" talk about Moriarty but instead is "pained" by it; (4) Watson writes a letter to Sigmund Freud in the magazine *Lancet* in an effort to secure help for Holmes; (5) Freud has withdrawn his initial advocacy of cocaine and is now treating victims of the drug; (6) Holmes' trip to Europe was not to follow Moriarty but to receive medical attention from Freud; (7) Freud successfully treated Holmes for cocaine addiction; and (8) in return for this help Holmes revealed to Freud his style of reasoning. While certain of these elements in the article do appear in the book, the similarity between the two appears to end there.

For instance, in the article, Musto attempts to connect episodes in Holmes' earlier career to the theory that Holmes was addicted to cocaine. Musto refers freely to Doyle's earlier writings, especially the opening scenes from *The Final Problem,* to support the theory that Holmes was suffering ". . . from the side effect of chronic cocaine use which often induces an extremely suspicious cast of mind and leads the sufferer to weave elaborate schemes to explain facts of whose significance only he is aware." (Article at 29). Musto then refers to the possibility that Holmes received treatment for his addiction from Freud before beginning a discussion of Freud's association with the drug. On the whole, it appears that the article is directed primarily to a discussion of the use and effects of cocaine in the 19th century with the added dimension of a connection between Freud and Holmes through the link of cocaine.

The book, on the other hand, attempts to set straight the record as to what really happened to Holmes during his alleged wanderings through Central Europe. While borrowing heavily at the beginning and at times copying *verbatim* from Doyle's *The Final Problem,* Meyer links Holmes to cocaine to introduce the setting of another Holmesian adventure, only this time with Sigmund Freud in Central Europe. The adventure starts out with Holmes following Professor Moriarty from London to Vienna with the aid of Toby, the remarkable bloodhound, who picks up an enduring trail of vanilla extract. The trail leads Holmes to the home of Sigmund Freud where Holmes realizes that he has been tricked by his friend, Watson. After a somewhat testy exchange of mental prowess with Freud, Holmes finally succumbs to Freud's arduous and painful cure of cocaine addiction. Holmes remains in a depressed state of mind following the cure until Freud encroaches upon him to come to the aid of Nancy Osborn Slater Von Leinsdorf, the American wife of Baron Von Leinsdorf. The mystery is rather elementary by Holmesian standards, but it provides a challenge to Freud's deductive reasoning and stimulates Holmes sufficiently so that he soon returns to his normal self.

Musto contends that the literal similarities between the book and his article are

such that it appears that Meyer copied passages *verbatim,* including the following:

| Musto | Meyer |
|-------|-------|
| "It struck me, records Watson that he (Holmes) was looking paler and thinner than usual." (Musto p. 29, col. 1, par. 1) | "He (Holmes) seemed thinner and paler than usual . . ." (Meyer p. 28, line 9) |
| "You have probably never heard of Professor Moriarty, said he. Never. Aye, there's the genius and the wonder of the thing! he cried. The man pervades London and no one has heard of him." (Musto, p. 29, col. 1, par. 4) | "Have you ever heard of Professor Moriarty?, he asked. . . Never. Aye, there's the genius and the wonder of the thing! . . . The man pervades London . . . . and no one has heard of him." (Meyer, p. 29–30) |

Musto concedes, however, that he borrowed the above quotations for his article from Sir Arthur Conan Doyle's *The Final Problem* which is in the public domain. Nevertheless, he contends that he is protected by his copyright as against an infringer who copies primary material from a secondary source, and that in any event the Court must presume against the defendants, not only access but copying of all common material, including public domain matter. *See MacDonald v. Du Maurier, supra.*

The protection afforded by a copyright extends generally only to those elements of a work which are original. *See* 17 U.S.C. § 1; *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512 (2d Cir. 1945). If a copyrighted work is derivative in the sense that it is based in whole or part upon a prior or underlying work, the copyright on the derivative work will not necessarily protect the underlying work. If, for instance, the underlying work is in the public domain, as is Sir Arthur Conan Doyle's *The Final Problem,* the copyright on the derivative work will not protect the underlying work. *See* Nimmer, *supra* at § 41; *American Code Co. v. Bensinger,* 282 F. 829 (2d Cir. 1922).

Assuming there was direct copying by Meyer of portions of Musto's article, *see Dellar v. Samuel Goldwyn, Inc.,* 104 F.2d 661, 662 (2d Cir. 1939); *Collins v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 83 (1939), it does not appear that the book contains anything similar other than the "idea" that Holmes was addicted to cocaine and that his addiction was cured by Sigmund Freud.[1] Certainly there is no similarity between the article and the book as to the objective or type of reader appeal, the fashioning of a plot, the delineation of characters, or the literary skill employed to reach the final objective. *See MacDonald v. Du Maurier, supra,* 144 F.2d at 702 (dissenting opinion). Musto's article, although somewhat tongue-in-check, was written for a professional journal with a bent toward informing his readership of the uses of cocaine in the 19th century. Meyer's book, meanwhile, was written as a revised version of an earlier Doyle story on the adventures of Sherlock Holmes with a view toward capturing the imagination of Holmes' followers. Since ideas and basic plots, or even isolated incidents are not protected by the copyright laws, 17 U.S.C. § 1; *Holmes v. Hurst, supra; Dymow v. Bolton, supra; Nichols v. Universal Pictures Corp., supra; Shipman v. R.K.O. Radio Pictures,* 100 F.2d 533 (2d Cir. 1938), it would appear that Musto's claim must fail.

### The Instant Motion

Motions for judgment on the pleadings or summary judgment in copyright infringement cases have been generally frowned upon in this Circuit, *Dellar v. Samuel Goldwyn, Inc., supra; MacDonald v. Du Maurier, supra; Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946). However, such motions may be granted for the defendant if, after assuming copying, the Court finds that any similarity between the works is insubstantial or that undisputed facts raise a complete defense as a matter of law. Nimmer, *supra* at § 138; *See, Fuld v. National Broadcasting Co., supra; Buckler v. Paramount Pictures, Inc.,* 133 F.Supp. 223 (S.D.N.Y.1955); *see also, Meeropol v. Nizer,* 417 F.Supp. 1201 (S.D.N.Y.1976).

Here, the similarity between the article and the book is limited to the idea that Sir Arthur Conan Doyle misled the reading public in *The Final Problem* as to the real activities of Sherlock Holmes in

---

1. Holmes' use of cocaine was described by Sir Arthur Conan Doyle in *The Yellow Face.*

Central Europe, that Holmes was really addicted to cocaine at the time, and that Holmes' friend, Watson, tricked Holmes into following Professor Moriarty to Vienna so that he could be cured of his habit by Sigmund Freud. Even assuming the "idea" of Holmes' cocaine addition was copied by Meyer from Musto's article without any reference to Sir Arthur Conan Doyle's earlier works, the Court finds as a matter of law that the copying involved only an "idea" and not an "expression of an idea" and therefore is not actionable under the copyright laws. *See Mazer v. Stein, supra; Baker v. Selden,* 101 U.S. 99 (1879); *Reyher v. Children's Television Workshop,* 533 F.2d 87 (2d Cir. 1976); *Fuld v. National Broadcasting Co., supra.*

Since the defendants have a complete defense as a matter of law with respect to Musto's claim of infringement by the publication of the book, defendants' motion for judgment on the pleadings will be granted as to the first claim contained in Musto's complaint.

The second claim relates to the motion picture film which has not been furnished to the Court. Accordingly, defendants' motion for judgment on the pleadings as to the second claim is denied without prejudice.

Settle judgment on notice.