**GANZ BROS. TOYS, Plaintiff,**

v.

**MIDWEST IMPORTERS OF CANNON FALLS, INC., Defendant.**

Civ. A. No. 93–549–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 20, 1993.

Belinda J. Scrimenti, Baker & Hostetler, Washington, DC, Frederick W. Chockley, Gregory A. Paw, Baker & Hostetler, Alexandria, VA, Bruce O. Baumgartner, Baker & Hostetler, Cleveland, OH, for plaintiff.

Charles A. Mays, Nicole A. Engisch, Leonard, Street and Deinard, Minneapolis, MN, Robert P. Trout, John Thorpe Richards, Jr., Dunnells & Duvall, Washington, DC, for defendant.

### MEMORANDUM OPINION

#### I.

ELLIS, District Judge.

The parties' cross motions for summary judgment raise the issue of the proper standard for summary judgment in a copyright infringement action. Because neither party can establish the existence or the absence of

substantial similarity between the two sets of figurines at issue, their motions for summary judgment must be denied.

## II.

In 1990, Abe Design Studio, an organization in Taiwan owned by Chan Chu–Kuo (also known as "Abe Chan"), created a series of anthropomorphic resin mouse figurines. Dior Merchandise Co., Ltd. ("Dior") was the designer and original owner of all right, title and interest in this line of figurines, hereinafter referred to as "Dior mice." Dior sold these mouse figurines to various distributors in the United States, including defendant Midwest Importers of Cannon Falls, Inc. ("Midwest") and Dawson Alliants Corporation, a company owned by William R. Dawson, III. In spring of 1991, Dawson conveyed his distribution rights in the Dior mice to plaintiff Ganz Bros. Toys ("Ganz"). Thereafter, in July 1991, Ganz obtained from Dior by assignment all right, title, and interest in the Dior mice.[1] When Ganz obtained these rights, Dior assured Ganz that Dior would cease selling Dior mice to any other company. After acquiring the rights to the Dior mice, Ganz began to market these figurines under the name "Little Cheesers." Midwest, meanwhile, had stopped placing orders with Dior for mouse figurines in March 1991, but continued to sell Dior mice until its inventory was depleted.

In May 1991, Midwest began to consider creating and developing its own line of mouse figurines. In the course of this process, Midwest claims it was referred to Abe Design Studio by another trading company, but further claims that it was unaware that Abe Design had been involved in the design of Dior mice. Yet, Midwest admits that at the first meeting with Abe Chan, Midwest's representative saw the Dior mice in Chan's showroom. Not surprisingly, the parties dispute the extent to which Midwest asked Abe Chan to use the "Little Cheesers" as a guide in the creation of this new line of figurines. Midwest claims that it gave Abe Chan a list of ideas for a mouse figurine series, and asked him to develop a unique series of mice. Ganz, on the other hand, contends that Midwest presented Abe Chan with a "Little Cheesers" figurine to use as a model for developing the new Midwest line of figurines.[2] In any event, the resulting figurine series was marketed by Midwest, first under the name "Victorian Mice" and later under the name "Merry Mousetales."

In January 1992, Ganz became aware that Midwest was selling anthropomorphic resin mouse figurines. Communications between the parties revealed that these figurines were the Dior mice Midwest had purchased prior to Ganz's acquisition of rights to the "Little Cheesers" figurines. After receiving Midwest's assurances that it would only sell the mice until its inventory was depleted and that Midwest recognized Ganz's rights to the "Little Cheesers" figurines, Ganz decided not to pursue the matter at that time.[3] Ganz contacted Midwest again in 1993 after the "Merry Mousetales" line had been released, asserting that the line constituted an infringement of Ganz's copyrights. When Midwest refused to discontinue its production

---

1. The assignment was obtained from Dior, Abe Design Studio, Abe Chan, and Don Chun–Win, an Abe Design Studio employee who was the original sculptor of the figurines.

2. Abe Chan's testimony does not put this matter to rest for summary judgment purposes because he has given two arguably contradictory affidavits on the issue. Chan's first declaration, obtained by Midwest's attorneys, asserts that the "Little Cheesers" mice and the Midwest mice are not substantially similar. By contrast, his second declaration, obtained by Ganz's attorneys, asserts that he voiced concerns to Midwest about the similarity between the two sets of figurines. Not surprisingly, Midwest contends that Chan was pressured by Ganz into making the second declaration.

3. Midwest has sought to assert an estoppel defense based on a statement purportedly made by a Ganz attorney to the effect that Ganz would not pursue infringement against Midwest. Significantly, this statement was made in the context of settlement negotiations concerning Midwest's sales of its remaining inventory of Dior mice and not with respect to the sale of "Merry Mousetales" mice. Because this statement was made in the settlement context and because its probative value is outweighed by its unfair prejudice, the Court granted Ganz's motion *in limine* to exclude the statement. *See* Fed.R.Evid. 401, 402, 403, 408.

899

and sale of the figurines, Ganz responded with this lawsuit.

## III.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate when "there is no genuine dispute as to a material fact" and "the moving party is entitled to judgment as a matter of law." Material facts are those facts whose determination will affect the outcome of a suit, and an issue of material fact is genuine if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, disposition by summary judgment is appropriate when the evidence, taken as a whole and viewed in the light most favorable to the party opposing the motion, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). In this regard, the moving party need not present evidence proving that there is an absence of a genuine issue of material fact. Instead, the moving party has the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits:

> "If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

In sum, it follows that "summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir.1990).

## IV.

Application of these general summary judgment principles to the copyright infringement claim at bar requires first a statement of the elements of copyright infringement. To prevail on a copyright infringement claim, the plaintiff must establish (1) ownership of a copyright, (2) validity of the copyright, and (3) unauthorized copying by the defendant. The third element—unauthorized copying—is the heart of copyright infringement. There is no actionable infringement where the creation of a work of art substantially similar to a copyrighted work occurs independently of the copyrighted work. Only where the copyright holder proves copying is infringement established. And copying can be established either directly or indirectly. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2nd Cir.1980); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). Indirect copying may be established by showing (1) defendant's access to the copyrighted work and (2) substantial similarity between the copyrighted work and the allegedly infringing work.

The issues of copyright ownership, copyright validity, direct copying, and access to the copyrighted material are amenable to conventional summary judgment analysis. Simply put, this means ascertaining first whether any facts material to these issues remain in dispute and, if not, proceeding then by way of deductive reasoning to arrive at a result by applying the pertinent law to the facts. But this straightforward, familiar summary judgment process does not apply to the substantial similarity issue. That issue, by contrast, demands not deductive reasoning, but a perceptual judgment. In essence, the infringing object must be viewed or juxtaposed against the copyrighted object and then an essentially aesthetic judgment must be made as to whether reasonable jurors would not differ in concluding that the over-

all appearance of the objects are substantially similar. This difference in summary judgment analyses and methodologies will become more apparent as each issue is examined.

**A. Copyright Ownership and Validity**

■ Midwest does not dispute Ganz's ownership of the copyrights to the "Little Cheesers" figurines.[4] But Midwest does dispute the validity of the copyrights. A valid copyright is established through proof of originality, copyrightability, and compliance with the statutory requirements imposed by the Copyright Act. The originality and copyrightability of the "Little Cheesers" figurines is clear;[5] therefore, Midwest's challenge understandably focuses on Ganz's compliance with the requirements of the Copyright Act.

■ It is well established that a presumption of validity arises from copyright registration, 17 U.S.C. § 410(c), and that the party challenging the copyright has the burden of overcoming this presumption of validity. *See M. Kramer Manufacturing Co. v. Andrews,* 783 F.2d 421, 434 (4th Cir.1986). To carry this burden, Midwest argues that the "Little Cheesers" figurines are derivative works owing to minor modifications Ganz made in the original designs and that the copyright is invalid because Ganz failed to designate the "Little Cheesers" figurines as derivative works on its copyright registration. Midwest also argues that the copyrights are invalid because the Ganz application misstates the year the work was completed. Neither argument is persuasive. A simple misstatement or omission on a copyright registration, made without intent to defraud the Copyright Office, is not sufficient to invalidate a copyright registration. *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.,* 1993 U.S.Dist. LEXIS 6347 (W.D.N.Y.1993). Because the mistakes alleged by Midwest are minor and because there is no credible proof that Ganz intended to mislead the Copyright Office, the statutory presumption of validity is not rebutted. Therefore, Ganz has established that it owns valid copyrights of the "Little Cheesers" mouse figurines. There is no genuine issue of material fact on this issue.

**B. Direct Copying**

■ Close scrutiny of the direct copying issue reflects that it is not amenable to summary judgment. Material issues remain disputed. It is not enough to argue, as Ganz does, that Abe Design Studio's role in creating both the "Little Cheesers" and the "Merry Mousetales" lines of figurines establishes direct proof of copying. At most, this fact permits an inference that copying occurred, an inference that is inconsistent with other record facts. Thus, Midwest avers that it did not know that Abe Chan had worked on the "Little Cheesers" at the time that it arranged to meet with him. Further, Midwest also avers that it specifically asked Abe Chan to create a unique line of mouse figurines and did not ask or expect Abe Chan to rely on the Dior mice. Beyond this, Midwest avers that the creation record for "Merry Mousetales" contradicts any inference of copying. In sum, the direct copying issue is plainly a triable issue of fact for the jury.[6] Yet, this

---

4. Ganz has submitted uncontested copies of copyright certificates which indicate that Dior and Abe assigned their ownership in the Dior mice to Ganz. Ganz also submitted an acknowledgment of rights in which Midwest acknowledged "the proprietary nature of Ganz Bros. in the 'Little Cheeser' line ... and that all rights, title, and interest to the copyrights and trademarks belong to Ganz Bros....."

5. The standard for "originality" required for copyright protection is not difficult to meet. "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, ——, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). The "Little Cheesers" mice figurines clearly meet this originality standard. They were independently created by Abe Design Studio and are plainly the product of more than a minimal level of creativity.

6. Midwest further asserts that Ganz's copying claim is barred because the elements at issue do not constitute original expression, but rather represent ideas, which are not protected under copyright law. This argument is unpersuasive. While Midwest correctly asserts that Ganz may not claim copyright protection for the idea of anthropomorphic resin mouse figurines, Ganz makes no such expansive claim here. Instead, Ganz's necessarily more limited claim rests on

does not end the matter. Ganz can still establish the element of copying by showing first access to the copyrighted article at the time the allegedly infringing article was created and then by showing that the allegedly infringing article is substantially similar to the copyrighted article.

## C. Access

 Access is established when the plaintiff shows that the defendant had an opportunity to view or copy the plaintiff's work. *Krofft*, 562 F.2d at 1172. It is clear that Midwest had access to Ganz's copyrighted mice. Midwest cannot deny that it had the opportunity to view the Dior mice, later renamed "Little Cheesers," during 1990–91, when Midwest was distributing the Dior mice in the United States. Furthermore, it is undisputed that Abe Design Studio, the designer of the "Little Cheesers" mice, also designed Midwest's figurines. There is no genuine dispute on the issue of access.

## V.

With ownership, validity, and access established, only substantial similarity stands in the way of granting summary judgment on copyright infringement. This issue, it turns out, is an insurmountable obstacle to summary judgment.

 The test for determining substantial similarity has evolved over time. The first important formulation of the test was stated by Judge Learned Hand in *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2nd Cir.1960). There, Judge Hand established an "ordinary observer" test, under which substantial similarity exists when an ordinary observer compares two works and, "unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics*, 274 F.2d at 489. The modern formulation of the substantial simi-

larity test retains this focus on an "ordinary observer," and reveals that "[t]he question to be answered is not whether there are differences in detail between the copyrighted and accused items when subjected to minute scrutiny, but whether the accused item is so similar to plaintiff's that an ordinary lay person would conclude that one was copied from the other." *Cynthia Designs, Inc. v. Robert Zentall, Inc.*, 416 F.Supp. 510, 513 (S.D.N.Y. 1976); *see also Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2nd Cir. 1980). Thus, to establish substantial similarity for purposes of summary judgment, Ganz must show that no reasonable jury could find that the similarities between Midwest's figurines and Ganz's figurines are not substantial, nor that the similarities could have occurred without copying. This evaluation should be based on the ordinary and reasonable layperson's overall impression of the two works, not on a detailed comparison of the two works, focusing on individual differences.[7] Further, because this determination involves distinguishing similarities presumably based on coincidence from those based on copying, it follows that if the similarities are extensive and include significant detail, copying may appear more likely. By the same token, similarities between unusual and original aspects of the copyrighted work will arouse suspicion of copying and increase the likelihood of a finding of infringement.

The substantial similarity test presents a difficult and unique task for courts, for, in making the substantial similarity determination for purposes of summary judgment, courts are required to do more than apply rules of law to undisputed facts. Instead, courts must examine and compare the works in question and determine whether reasonable jurors could differ in concluding that the similarity must be the result of copying. The difficulty of making such a determination explains the general reluctance of courts to find substantial similarity for the plaintiff on

---

the artistic expression manifested in the "Little Cheesers" figurines.

**7.** *See Krofft*, 562 F.2d at 1164 (quoting *Twentieth Century–Fox Film Corp. v. Stonesifer*, 140 F.2d

579, 582 (9th Cir.1944)) ("[t]he two works involved ... should be considered and tested, not hypercritically or with meticulous scrutiny, but by the observations and impressions of the average reasonable reader and spectator.").

summary judgment.[8]

In the case at bar, a comparison of the two sets of figurines reveals that, although a resemblance exists, the figurines are not so similar as to warrant the granting of summary judgment. Several distinctive features of the Midwest mice could lead the hypothetical ordinary and reasonable observer to conclude that they are not substantially similar in overall appearance to Ganz's "Little Cheesers." Some of these distinctive features are subtle, such as small differences in the ears[9] or differences in jaw shape.[10] Other differences are more apparent. These include the texture of the fur and the paint treatment. The texture of the Ganz mice follows a distinctive pattern. Prominent tufts of fur protrude down the middle of each figurine's face.[11] The Midwest mice lack this distinctive fur texture, exhibiting instead a more even and subtle facial texture.[12] The painting of the figurines also contributes to the difference in overall appearance. Ganz's figurines have a watercolor wash finish, whereas Midwest uses an opaque, heavier paint.[13] In addition, the overall color scheme between the two sets of figurines has a great impact on their overall appearance. While Ganz's mice are entirely pale brown and white, Midwest's mice are dark grey with contrasting pink noses and ears.[14] None of these distinctive features, taken alone, is sufficient to establish a lack of substantial similarity. But taken together, they may be seen by an ordinary observer as contributing to an overall difference in impression created by the two sets of figurines. To be sure, there are many significant similarities between the sets of figurines,[15] and Ganz may well convince a jury that Midwest's figurines are substantially similar to Ganz's figurines in overall appearance and that this similarity is a result of copying. In sum, because a reasonable jury could find either way on substantial similarity, summary judgment for Ganz is inappropriate.

## VI.

Midwest's motion for summary judgment on the issue of copyright infringement must also be denied. To win summary judgment, Midwest must establish either than no reasonable jury could find that the works were substantially similar or that any similarities between the works are attributable to noncopyrightable elements. But, as already noted, neither showing can be made on the summary judgment record.

## VII.

For the reasons stated herein, both parties' motions for summary judgment on the issue of copyright infringement must be denied.

An appropriate order has been issued.

8. In the overwhelming majority of cases in which summary judgment is granted on the issue of substantial similarity, the court finds that no substantial similarity exists. *See, e.g., Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2nd Cir.1980); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2nd Cir.1980); *Musto v. Meyer*, 434 F.Supp. 32 (S.D.N.Y.1977), *aff'd* 598 F.2d 609 (2nd Cir.1979).

9. Compare the larger, detailed ears of Ganz mice in plaintiff's exhibits A–7, A–9, and A–17 with the simpler, more pointed ears of Midwest mice in D.

10. The jaws of the Midwest mice appear to be slightly sharper than those of the Ganz mice. Compare plaintiff's exhibits A–1, A–8, A–12, A–13, with D.

11. *See, e.g.,* plaintiff's exhibits A–7 through A–19.

12. *See, e.g.,* plaintiff's exhibits C–3, C–29, and D.

13. Compare plaintiff's exhibits A–7 to A–18 with exhibits C–1 to C–3 (and C–6, 7, 8; C–17, 18, 19; C–44, 45, 46) and D.

14. Compare plaintiff's exhibits A–7 to A–18 with exhibits C–1 to C–3 (and C–6, 7, 8; C–17, 18, 19; C–44, 45, 46) and D. Despite Ganz's arguments to the contrary, differences or similarities in color are factors to consider in evaluating the overall artistic effect of a given work. *See Durham Industries*, 630 F.2d at 914–916; *Slifka v. Citation Fabrics Corp.*, 329 F.Supp. 1392, 1393 (S.D.N.Y.1971).

15. Compare plaintiff's exhibits A–7 to A–18 with exhibits C–1 to C–3 (and C–6, 7, 8; C–17, 18, 19; C–44, 45, 46) and D. The sets of figurines appear to share chunky body proportions, oversized hands and feet, similar facial expressions, and large, swept back ears.