**DURHAM INDUSTRIES, INC.,**
Plaintiff–Appellee,

v.

**TOMY CORPORATION,**
Defendant–Appellant.

**No. 639, Docket 79–7752.**

United States Court of Appeals,
Second Circuit.

Argued March 27, 1980.

Decided Sept. 2, 1980.

Lewis H. Eslinger, New York City (Stuart A. White, James D. Fornari, Curtis, Morris & Safford, P. C., New York City, F. David LaRiviere, Carson, California, Mori & Ota, Los Angeles, Cal., of counsel), for defendant–appellant.

James M. Rhodes, Jr., New York City (John M. Calimafde, Michael Ebert, Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, of counsel), for plaintiff–appellee.

Before FRIENDLY and MESKILL, Circuit Judges, and THOMSEN,* District Judge.

MESKILL, Circuit Judge:

Appellant Tomy Corporation and appellee Durham Industries, Inc. are American companies engaged in the manufacture and sale of toys. In January of 1979, counsel for Tomy accused Durham of systematically copying certain Tomy toys and threatened to take legal action if the matter was not immediately resolved by other means. Evidently believing that the best defense is a good offense, in February of 1979 Durham filed an action against Tomy in the United States District Court for the Southern District of New York seeking a declaratory judgment to the effect that in marketing its line of toys Durham had violated no legal rights of Tomy. In response, Tomy asserted nine counterclaims against Durham: eight counterclaims alleging copyright infringement in regard to eight specified toys [1] and the ninth counterclaim alleg-

---

* Honorable Roszel C. Thomsen, United States District Judge for the District of Maryland, sitting by designation.

1. The eight Tomy toys involved in this case were actually created by Tomy–Kogyo Co., Inc., a Japanese corporation of which Tomy is a wholly–owned subsidiary. Tomy claims that by general assignments recorded in the Copyright Office, Tomy–Kogyo assigned to Tomy all its right, title and interest in and to the copyright rights in these works. Durham does not contest these representations, and Tomy's ownership of the copyrights asserted is therefore not at issue. 17 U.S.C. § 205(d); 37 C.F.R. § 201.4. *See* 3 M. Nimmer on Copyright § 12.08 at 12–59 (1980) ("Nimmer").

ing unfair competition under both the Lanham Act, 15 U.S.C. § 1125(a), and state law, in regard to the same eight Tomy products.

After some preliminary skirmishing between the parties,[2] Durham moved for and was granted summary judgment dismissing all nine counterclaims. Viewing the dismissal of Tomy's counterclaims as a de facto and satisfactory resolution of the entire controversy, Durham voluntarily dismissed its declaratory judgment action. Claiming that the dismissal of its counterclaims was erroneous, Tomy has appealed.

For purposes of discussion the eight pairs of toys involved in this case may be grouped into two categories: the Disney figures, of which there are three pairs, and the miscellaneous toys, of which there are five pairs. In analyzing the Disney figure counterclaims we have focused on the threshold issue of copyright validity; our analysis of the counterclaims involving the miscellaneous toys centers on the very different issue of copyright infringement.

### THE DISNEY FIGURES

Tomy claims to hold copyrights on three wind–up plastic figures, each about three inches in height and each capable of locomotion, which are instantly recognizable as the Disney characters Mickey Mouse, Donald Duck and Pluto Dog. Durham has manufactured and distributed virtually indistinguishable versions of these three Disney figures, and Durham concedes that in making these toys it used Tomy's Disney figures as models. Tomy asserts that Durham has thereby infringed upon Tomy's exclusive right to copy its own creations.

Before asking a court to consider the question of infringement, a party must demonstrate the existence and the validity of its copyright, for in the absence of copyright (or patent, trademark, or state law) protection, even original creations are in the public domain and may be freely copied. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); *see also Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973). In many cases, the existence of a valid copyright can be established by the introduction into evidence of a Copyright Office certificate of registration. Such a certificate, if timely obtained, "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (Copyright Act of 1976); *cf. Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) (certificate given same effect under 1909 Copyright Act); *see* 3 M. Nimmer on Copyright § 12.11 (1980) ("Nimmer"). It is clear, however, that a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed.

In the instant case, the evidence that raises–and we think necessitates an adverse determination of–the issue of the validity of Tomy's copyrights on its three Disney figures is the mute testimony of Mickey, Donald and Pluto themselves. One look at Tomy's figures reveals that, in each, the element of originality that is necessary to

---

2. Shortly after filing its complaint Durham learned that the following "Notice to the Trade" had appeared in the February 20, 1979, edition of "Toy Trade News," a publication distributed free of charge to visitors at the annual Toy Fair held in New York City:

TOMY CORPORATION has charged DURHAM INDUSTRIES, INC. with copyright infringement and unfair competition for selling toys and games that closely simulate original TOMY products. Legal action is now pending in the United States District Court for the Southern District of New York involving such products. TOMY intends to vigorously

prosecute those that copy products originated by TOMY.

Arguing that this notice was both improper and damaging to its business, Durham promptly moved for a preliminary injunction requiring Tomy to take certain corrective measures. Finding Tomy's notice to be misleading in that it failed to specify which of Durham's many toys were accused and finding further that the notice was published in bad faith, Judge Constance Baker Motley ordered Tomy to publish appropriate retraction notices and to refrain from publishing further overbroad "notices to the trade."

support a valid copyright is totally lacking. For half a century or so Disney's characters have peered at us from movie screens, comic books, television sets, posters, clothing, watches, dolls, and a variety of other media, and it would be safe to say that they have a recognition factor that any politician or celebrity would envy. *See Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1171 (9th Cir. 1977) (Mickey Mouse recognized worldwide); *Walt Disney Productions v. Air Pirates*, 345 F.Supp. 108 (N.D.Cal.1972) (Disney characters instantly recognizable), *aff'd in part*, 581 F.2d 751 (9th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). The three Tomy figures are instantly identifiable as embodiments of the Disney characters in yet another form: Mickey, Donald and Pluto are now represented as small, plastic, wind–up toys.[3]

Neither party contests the fact that Walt Disney created the three characters at issue. Tomy acknowledges Disney's ownership of copyrights on these characters[4] and concedes that without a license from Disney Tomy's publication of its Disney figures would constitute infringement. That Tomy's creations are derivative works[5] is in itself, of course, no bar to copyrightability. Derivative works are explicitly included in the subject matter of copyright as defined by the Copyright Act. 17 U.S.C. § 103. But this principle is subject to two important and related limitations. First, to support a copyright the original aspects of a derivative work must be more than trivial. Second, the scope of protection afforded a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material.[6] Thus the only aspects of Tomy's Disney figures entitled to copyright protection are the non–trivial, original features, if any, contributed by the author or creator of these derivative works.

In *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.) (en banc), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), we discussed at length the concepts of originality and triviality as they applied to a derivative work based on an article in the public domain. In that case, we held appellant's plastic Uncle Sam bank, a derivative work based on similar banks in the public domain, insufficiently original to support a copyright. Although in the instant case the preexisting works are themselves the subjects of copyrights and are therefore not in the public domain, the standard announced in *Batlin* by which the copyrightability of a derivative work is to be determined is fully applicable.[7]

---

**3.** Conceding that the Disney figures are not covered by any patents, Tomy claims no protection against the copying of the purely functional, non–artistic aspects of the toys, such as the wind–up mechanisms which enable the figures to move.

**4.** We do not express any opinion as to the validity or invalidity of Disney's copyrights on the characters of Mickey Mouse, Donald Duck, or Pluto. For the purposes of this case we shall assume, as the parties have assumed, that the Disney characters enjoy copyright protection. For a discussion of the copyrightability of Disney's characters, *see Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 754–55 (9th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

**5.** Section 101 of Title 17 defines a derivative work as one "based upon one or more preexisting works . . . ." Specifically included in this definition are art reproductions and "any other form in which a work may be recast, transformed, or adapted." Tomy registered its three Disney figures as derivative works, identifying Disney as the creator of the original characters and claiming copyright only "in the specific sculptural rendition" of each character.

**6.** Section 103(b) of Title 17 provides:

The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

**7.** *Batlin*, decided in 1976, dealt with the Copyright Act of 1909, which contained no express requirement of originality. Counterclaims 3, 4 and 5, which arose after January 1, 1978, the effective date of the Copyright Act of 1976, are governed by the 1976 Act's express restriction

The analysis in *Batlin* started from the premise that " 'the one pervading element prerequisite to copyright protection regardless of the form of the work' is the requirement of originality--that the work be the original product of the claimant." *Id.* at 489–90 (*quoting* § 10 of 1975 edition of Nimmer; *see* 1 Nimmer § 2.01 at 2–5). At least since *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512 (2d Cir. 1945), we have interpreted this requirement--which is rooted in the Constitution--to mean that to be copyrightable a work must "contain[] some substantial, not merely trivial, originality . . . ." *Id.* at 513.

■ Although novelty, uniqueness and ingenuity are not required, independent creation is. *Batlin*, 536 F.2d at 490. *Accord, Donald v. Zack Meyer's T.V. Sales and Service*, 426 F.2d 1027, 1029–30 (5th Cir. 1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971). Independent creation, in turn, means that a work must not consist of actual copying. *Batlin*, 536 F.2d at 490, *citing Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102–03 (2d Cir. 1951). This test of originality, which has been aptly characterized as "modest," "minimal," and as establishing a "low threshold," is the *sine qua non* of copyrightability. *Batlin*, 536 F.2d at 490, *citing Herbert Rosenthal Jewelry Corp. v. Grossbardt*, 436 F.2d 315, 316 (2d Cir. 1970), and *Nimmer; see Puddu v. Buonamici Statuary, Inc.*, 450 F.2d 401, 402 (2d Cir. 1971) ("modest"); *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 411 (2d Cir. 1970), *cert. denied*, 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971) ("modest at best"); *Millworth Converting Corp. v. Slifka*, 276 F.2d 443, 445 (2d Cir. 1960) ("modest"); *see also Dan Kasoff, Inc. v. Novelty Jewelry Co.*, 309 F.2d 745, 746 (2d Cir. 1962) ("faint trace" of originality required).

■ Particularly important for decision of the case before us is the explicit rejection in *Batlin* of the contention that the originality requirement of copyrightability can be satisfied by the mere reproduction of a work of art in a different medium, or by the demonstration of some "physical" as opposed to "artistic" skill. *Batlin*, 536 F.2d at 491, declining to follow contrary holding in *Doran v. Sunset House Distributing Corp.*, 197 F.Supp. 940, 944 (S.D.Cal.1961), *aff'd*, 304 F.2d 251 (9th Cir. 1962) (first reproduction of traditional Santa Claus character in three–dimensional form and plastic medium held sufficiently original to support copyright). Thus, the mere reproduction of the Disney characters in plastic, even though the adaptation of the preexisting works to this medium undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term. Tomy has demonstrated, and the toys themselves reflect, no independent creation, no distinguishable variation from preexisting works, nothing recognizably the author's own contribution that sets Tomy's figures apart from the prototypical Mickey, Donald, and Pluto, authored by Disney and subsequently represented by Disney or its licensees in a seemingly limitless variety of forms and media. *Batlin*, 536 F.2d at 490; *Alfred Bell & Co. v. Catalda Fine Arts, Inc., supra*, 191 F.2d at 102–03, 105.

As we noted in *Batlin*, "[t]o extend copyrightability to minuscle variations would simply put a weapon for harassment in the hands of mischievous copiers . . . ." 536 F.2d at 492. In that case, our concern was with the appropriation and monopolization of work in the public domain. In the instant case, our concern is with carrying out the statutory command that protection of a derivative work not affect the scope of

of the subject matter of copyright to "original works of authorship." 17 U.S.C. § 102. The House Report explains:

> The phrase "original works of authorship," which is purposely left undefined, is intended to incorporate without change the standard of originality established by the courts under the present copyright statute.

H.Rep.No.1476, 94th Cong., 2d Sess. 51 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5664 (reprinted in 4 Nimmer App. 4). Thus, the standard of originality established in *Batlin* and other cases under the 1909 Act governs the disposition of these counterclaims under the 1976 Act.

copyright protection in an underlying work. If we were to recognize Tomy's derivative copyrights in its figures, those who, like Durham, have obtained from Disney the right to copy Disney's own characters would, as a practical matter, have to make substantial changes in these characters in order to avoid infringing Tomy's rights. In theory, of course, there would be no infringement of Tomy's rights if Durham copied Disney's characters and not Tomy's figures, see 2 Nimmer § 8.01[C] at 8–13 to 8–14, but because proof of access plus substantial similarity can support a finding of infringement, Durham would at the very least be vulnerable to harassment. Yet any significant changes made by Durham to avoid liability would carry it away from the original Disney characters, in which Tomy concededly has no copyrights, and Disney's right to copy (or to permit others to copy) its own creations would, in effect, be circumscribed. Thus it is clear that the originality requirement imposed by the Constitution and the Copyright Act has particular significance in the case of derivative works based on copyrighted preexisting works.

Lacking even a modest degree of originality, Tomy's Disney figures are not copyrightable. As to these toys we therefore need not consider the question of infringement by Durham.[8]

## MISCELLANEOUS TOYS

■ In connection with the five remaining copyright counterclaims, Durham does not challenge—and we can find nothing in the record that tends to cast doubt on—the validity of the copyrights asserted by Tomy. In the absence of any evidence to the contrary, the certificates of registration may properly be viewed as establishing Tomy's right to sue for infringement. Our study of both the toys and the law, however, convinces us that Tomy has failed to prove that its copyrights were in fact infringed.

■ Although the legal principles governing the infringement actions are easily stated, they are of limited utility in the decision of particular cases. As explained in *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*, 558 F.2d 1090, the question of infringement is generally resolved by the fact–finder's prediction of the probable reaction of a hypothetical "ordinary observer."

In order to prove infringement a plaintiff must show ownership of a valid copyright and copying by the defendant. . . . Since direct evidence of copying is rarely, if ever, available, a plaintiff may prove copying by showing access and "substantial similarity" of the two works.

\* \* \* \* \* \*

"Substantial similarity" is to be determined by the "ordinary observer" test. Judge Learned Hand in defining this test stated there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Pe-*

---

**8.** In connection with Durham's motion for summary judgment below and again in briefing and arguing this appeal, the parties have focused on establishing and interpreting the complicated contractual relations among Durham, Tomy, Disney, and the foreign affiliates of the latter two companies. However, because the various agreements in the record, whether interpreted as Tomy urges or as Durham urges, have no bearing on the dispositive issue of the non–validity of the copyrights asserted as to the three Disney figures, it would serve no useful purpose for us to discuss and resolve the contested contractual issues or to review those assignments of error directed solely to the district court's disposition of these questions.

While as a general rule we do not consider issues not raised or passed upon below, under certain circumstances it is appropriate for us to do so. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Because on the undisputed facts the proper resolution of the dispositive copyright validity issue is beyond doubt, this is such a case. *See Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1215 n.5 (2d Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972), *citing Helvering v. Gowran*, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937). Therefore, although the precise basis for the district court's dismissal of Tomy's three Disney counterclaims is not apparent on the face of the order entered below, we nevertheless affirm the judgment on the ground that Tomy's figures are not copyrightable.

ter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). More recently this court formulated the test as "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir. 1966). And, of course, by definition "[t]he copying need not be of every detail so long as the copy is substantially similar to the copyrighted work." Comptone Co. v. Rayex Corp., 251 F.2d 487, 488 (2d Cir. 1958). . . .

Id. at 1092–93 (footnote omitted).[9]

Durham does not deny access to Tomy's toys and for purposes of this appeal we will assume that Tomy could, if given the opportunity, carry its burden on this element of its counterclaims. A comparison of the toys, however, indicates that Durham did not use this access to create toys substantially similar to those protected by Tomy's copyrights.[10]

 This is not to deny that there is a certain amount of similarity apparent in each pair of toys, as will be seen below. But a general impression of similarity is not sufficient to make out a case of infringement. The only similarity of significance in assessing claims of infringement is similarity of expression. Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir. 1980). "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976), citing Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). Concededly, despite the impor-

tance of this dichotomy in delineating the scope of protection to be afforded a copyrighted work, it is a "difficult task . . . to distill the nonprotected idea from protected expression." Id. at 91. As Judge Hand acknowledged many years ago "no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc," Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra, 274 F.2d at 489, and often the determination is a matter of degree.

 The idea/expression distinction, although an imprecise tool, has not been abandoned because we have as yet discovered no better way to reconcile the two competing societal interests that provide the rationale for the granting of and the restrictions on copyright protection: "rewarding an individual's ingenuity and effort while at the same time permitting the nation to benefit from further improvements or progress resulting from others' use of the same subject matter." Reyher v. Children's Television Workshop, supra, 533 F.2d at 90. Thus, for example, in Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., 509 F.2d 64 (2d Cir. 1974), we held that the owner of a copyright on a particular gold turtle pin had no exclusive right to the idea embodied therein. As the district court stated in that case, "[t]he purpose of the copyright laws [is] to protect original designs from copying, not to convey to the proprietor any right to exclude others from the market place for jeweled turtle pins." 378 F.Supp. 485, 490 (S.D.N.Y. 1974). See also Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 740 (9th Cir. 1971) (plaintiff may not prevent others from manufacturing and selling jeweled bees).

**9.** Clearly then, the tests for copyright validity and copyright infringement are not the same. Puddu v. Buonamici Statuary, Inc., 450 F.2d 401, 402 (2d Cir. 1971). While the presence of a modicum of originality will entitle an author to copyright protection, "[i]ntroduction of a similar element by the copier of a copyrighted design will not avoid liability for infringement if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to

overlook them, and regard their aesthetic appeal as the same.' " Id., quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

**10.** It is unnecessary to determine whether these counterclaims arise under the new or old Act, because the rules, as applied to this case, would yield the same result.

It follows that where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying. *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F.Supp. 416, 423 (S.D.N.Y. 1965).

 There is another, equally important limitation on the scope of copyright protection that must be kept in mind in assessing substantial similarity. Just as copyright protection extends to expression but not ideas, copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work. *Mazer v. Stein, supra,* 347 U.S. at 218, 74 S.Ct. at 471. This distinction is embodied in the very definition of pictorial, graphic and sculptural works in the Copyright Act:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. Thus, in copyright actions, similarity of idea or function must be distinguished from similarity of artistic expression.

 Even as to protected aspects of a work, it should be emphasized that under the law only *substantial* similarity will support a determination of infringement. We have frequently held that where such substantial similarity is found, slight differences between a protected work and an accused work will not preclude a finding of infringement. *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092, 1093 (2d Cir. 1974); *Cynthia Designs, Inc. v. Robert Zentall, Inc.,* 416 F.Supp. 510, 513 (S.D.N.Y. 1976) ("The question to be answered is not whether there are differences in detail between the copyrighted and accused items when subjected to minute scrutiny, but whether the accused item is so similar to plaintiff's that an ordinary lay observer would conclude that one was copied from the other.") (footnote omitted); *see also Concord Fabrics, Inc. v. Marcus Brothers Textile Corp.,* 409 F.2d 1315, 1316 (2d Cir. 1969) (minor differences emphasize extent of deliberate copying); *accord, Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.,* 295 F.Supp. 1366, 1369 (S.D.N.Y.), *aff'd* 415 F.2d 1007 (2d Cir. 1969). Identity or near identity between the accused work and the protected work is definitely not required for a determination of infringement. "The key to the 'ordinary observer' test is therefore the similarities rather than the differences. Only a slavish copy would have no differences and '[n]o one disputes that the copyright extends beyond a photographic reproduction of the design.'" *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra,* 558 F.2d at 1093 n.4, *quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra,* 274 F.2d at 489. Yet we have also recognized that numerous differences tend to undercut substantial similarity. *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., supra,* 509 F.2d at 65. As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other.[11]

With these legal principles in mind, we turn to the five pairs of toys at issue. The district court's dismissal of the five "miscel-

---

**11.** As one authority has explained the role of differences in the determination of infringement:

> Of course, if the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, then no infringement results. . . . [A] defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.

3 Nimmer § 13.03[B] at 13–37 (footnotes omitted).

laneous toy" counts constitutes a determination, as a matter of law, that no reasonable juror could find that the ordinary observer would regard the five sets of toys involved as substantially similar. After examining the toys, we must agree. As many courts have noted in similar cases, words are no substitute for a visit to the toy store. Nevertheless we cannot discuss the question of infringement without attempting to describe the works involved.

*The Games*

Two of Tomy's counterclaims involve simple games. The first, sold by Tomy under the name "Pass the Nuts," is a stand–up, box–shaped toy about twelve inches in height. Four buttons located at the bottom of the box control four levers located behind the transparent plastic front of the toy. By pushing these buttons in the correct sequence, the player can move a plastic disc from the starting point to the goal. Tomy claims that Durham has infringed its Pass the Nuts copyright by manufacturing and distributing a similar game under the name "Mickey Mouse Peanut Putter."

Although the games are mechanically identical and structurally similar, they are distinguishable in many respects. Tomy's Pass the Nuts game is housed in a yellow box and operated by red buttons. The levers that push the disc and the backdrop against which these levers are placed are designed to make it appear as if a bear, a rabbit, a monkey and a squirrel are attempting to throw an acorn from the ground up to the top of a tree. Durham's Peanut Putter, housed in a green box and operated by yellow buttons, features Mickey Mouse, Minnie Mouse, Donald Duck and Pluto engaged in a game of golf, using a peanut rather than the more traditional golf ball, while the gallery (Huey, Dewey and Louie) cheers them on and Goofy officiates or possibly caddies.

The second game at issue is Tomy's battery–operated "Drive Yourself Crazy." This game is housed in a red plastic box about eight inches long. A yellow steering wheel at the bottom controls a car which rests on a moving highway. As in life, the object of this game is to steer the car so as to keep it on the road, without hitting any obstructions, for as long as possible. With skillful steering the player can compile 100 points by avoiding a construction site, a mailbox and various other roadside hazards. The corresponding Durham game, which Tomy claims constitutes an infringement of its rights to Drive Yourself Crazy, is the "Mickey Mouse Star Ship." Durham's version is mechanically identical and structurally very similar to the Tomy game, but as with the disc games described above, the Durham artwork, based on Disney characters, is totally different. Rather than steer an automobile through a race, the player in Durham's game is invited to help Mickey Mouse pilot his space ship from blast–off, through outer space, and to a safe landing. The player here must navigate his craft through such dangers as a meteor shower and an enemy attack and, presumably because of the difficulty of his mission, is given an opportunity, in mid–flight, to "make a wish upon a star." Unlike the Tomy game, Durham's game does not utilize a numerical scoring system.

While conceding that the "decoration" of Durham's games is entirely different from that of the respective Tomy games, Tomy maintains that the "sculpture" of each Tomy game is in itself an artistic creation protected by copyright,[12] that Durham copied this sculpture, and that Durham cannot avoid liability by papering over its copied, infringing sculpture with non–infringing decoration. Tomy's argument, however, overlooks the distinction drawn by the Copyright Act between art and utility. However counterintuitive such a classification may appear, for copyright purposes

---

**12.** Tomy registered the five miscellaneous toys as works of art (Class G). The two games were described as "sculpture and design;" the three dolls discussed in the next section of the opinion were identified as "sculptured work."

*See* 1 Nimmer § 2.18[H] for discussion of copyright protection for toys, games, and dolls; *Rushton v. Vitale*, 218 F.2d 434 (2d Cir. 1955) (chimpanzee doll copyrightable).

Tomy's games must be considered useful articles: each has "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. The Copyright Act provides that the design of a useful article can be considered a sculptural work "only if, and only to the extent that, such design incorporates . . . sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.*[13] The features of Tomy's games that have been copied by Durham relate solely to the mechanical, utilitarian aspects of the toys. The levers and buttons of the Pass the Nuts game and the steering wheel and moving path of the Drive Yourself Crazy game are the mechanisms that make the games work. The shapes of the toys and their dimensions and configurations also appear to have been dictated primarily by utilitarian considerations.

Tomy has simply failed to specify any "sculptural features" or aesthetic elements of either game which could be identified separately from and exist independently of the utilitarian aspects of the article. *See* 2 Nimmer § 8.01[D]. In fact, Tomy's games are "sculptures" only in the sense that every three–dimensional object has a shape. Neither game is a sculptural work as defined by the Copyright Act. *Cf. Esquire, Inc. v. Ringer*, 591 F.2d 796, 799–805 and n.9 (D.C.Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979) (shape of useful article not protected under 1909 Copyright Act). In light of Tomy's concession that the decorative aspects of its games have not been infringed, we must affirm Judge Motley's dismissal of the two counterclaims involving these particular Tomy toys. Where the similarity demonstrated pertains solely to noncopyrightable material, summary judgment is appropriate. *Hoehling v. Universal City Studios, Inc., supra*, 618 F.2d at 977.

*The Dolls*

Tomy also asserts by way of counterclaim that three Durham wind–up dolls, known collectively as "Mini–Winders," infringe certain copyrights held by Tomy.

Tomy's "Kid–A–Longs" is a plastic doll, about three inches long, apparently intended to represent a baby girl on her hands and knees. When wound, the doll crawls. Tomy claims that Durham's "Baby Mini–Winder" infringes upon the Kid–A–Longs copyright. That the idea behind each toy is the same is evident from a viewing of the toys, and the inference that Durham conceived of the *idea* for its doll only after viewing Tomy's toy is not an unreasonable one. Each toy represents a small, plastic, crawling baby dressed only in a diaper. Each has a head quite large in proportion to its body, and each has a rather broad face, with a wide–eyed "kewpie doll" appearance. But Durham's expression of this possibly copied idea differs in every articulable respect from that of Tomy. Tomy's female doll has a blue diaper, brown hair and a

---

**13.** The House Report on the 1976 Act emphasizes that the definition of "pictorial, graphic, and sculptural works" was intended "to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design."

> [A]lthough the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the uti-

> litarian aspects of the article" does not depend upon the nature of the design–that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three–dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the overall configuration of the utilitarian article as such.

> H.Rep.No. 1476, 94th Cong., 2d Sess. 55 (1976), U.S. Code Cong. & Admin. News 1976, p. 5668 (reprinted in 4 Nimmer App. 4).

blue bow on her hair; Durham's male doll wears a white diaper, has blonde hair arranged in bangs rather than curls, and sports no bow. In addition, his skin tone is lighter, his eyes are smaller, his eyelashes are fewer, his nose is more defined, his mouth is brighter and smaller, and his body appears longer. Moreover, his head appears somewhat larger, it is tilted at a different angle, and it is turned over his right rather than his left shoulder.

Tomy manufactures another type of "Kid–A–Longs," representing a baby, dressed only in a diaper, walking in a stroller rather than crawling. Durham has adopted this idea as well for its Mini–Winders series. As with the crawling dolls, both strolling dolls are mechanically identical and structurally similar. Both are made of plastic and stand between three and four inches tall. Yet in no articulable manner is Durham's expression of this idea the same as that of Tomy. Tomy's brown–eyed girl walks in a round stroller with a blue shelf attached to pink supports and wheels. Her pink diaper matches a pink bow in her hair. Her hair is light brown and is arranged in curls. Her arms are stretched out to her sides. Durham's blue–eyed boy, dressed in a classic white diaper, walks in a yellow stroller whose shape and structure is totally different from that created by Tomy: it is yellow, with blue wheels, and the shelf and supporting legs are all of a piece. The boy's dark brown hair is arranged in bangs rather than curls. His arms reach forward rather than to the sides. Unlike the Tomy girl, he lacks a navel. His eyes are smaller, his nose is sharper, his mouth is pinker, his eyelashes are fewer, and his head is bigger.[14]

Tomy's final copyright counterclaim involves its "Rascal Robots" toy. This wind-up automaton has a silver–toned trunk, topped by a transparent blue dome and supported by orange feet. Its stationary orange arms jut straight out in front. The concept of legs has been entirely discarded. Durham's accused "Star Mission Mini–Winder Robot" is significantly taller and thinner. His head is a clear plastic dome and his arms and legs are green. In comparison to the Tomy robot Durham's robot has a more elongated head; a more elongated body; thinner, longer and straighter arms (which are moveable rather than stationary); and feet that are flatter and are attached to a pair of legs rather than directly to the trunk.

The most distinctive feature of the three Tomy dolls is their ability to walk or crawl, but it is clear from our discussion of the art/utility distinction that Durham is free to copy not only the idea of walking or crawling dolls but the mechanism that makes such locomotion possible as well. One would probably notice next the small size of the Tomy dolls and the fact that they are made of plastic, but, of course, Tomy's copyrights do not preclude others from making small, plastic wind–up dolls. In regard to the baby dolls, a certain degree of similarity is attributable to the "kewpie doll" appearance of both the Tomy and the Durham toys, but as stated in *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1023 (2d Cir. 1966), full faces, pert noses, bow lips, and large, widely spaced eyes are standard doll features. As we recently noted in discussing the alleged infringement of a copyrighted story for children, " '[s]imilarity of expression . . . which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.' " *Reyher v. Children's Television Workshop, supra*, 533 F.2d at 91, *quoting* 1 Nimmer § 143.11 (1975 edition). The same principle applies to the instant case. Similarity as to standard doll

---

14. We should note that when the four dolls are viewed together the family resemblance between the two Tomy dolls and between the two Durham dolls is clear. The two Tomy girls have hair of the same color arranged in the same style and topped with the same type of bow. Their eyes and eyelashes are identical as to shape and placement and their mouths and noses are virtually indistinguishable. Similarly the Durham boys could pass for brothers. Their facial features are precisely the same as to color, shape and placement. Although one is a blonde and one has dark hair, they have the same hair style.

features is not as indicative of copying as would be similarity of features that render the protected toy distinctive.

 Keeping in mind that only the artistic rather than the mechanical aspects of Tomy's dolls are copyrightable, that only Tomy's expression of its ideas is protected, and that all dolls attempting to express the same idea will of necessity display at least some similarity, we must agree with the district court that as a matter of law, Durham's accused dolls are not substantially similar to Tomy's copyrighted dolls. In our view, " 'the total effect of the image conveyed to an ordinary observer by the accused dolls is quite distinct.' " *Ideal Toy Corp. v. Fab–Lu Ltd., supra*, 360 F.2d at 1022 (quoting the district court's opinion).

While it has been said that "[g]ood eyes and common sense may be as useful as deep study of . . . cases, which themselves are tied to highly particularized facts," *Couleur International Ltd. v. Opulent Fabrics Inc.*, 330 F.Supp. 152, 153 (S.D.N.Y. 1971), we have nevertheless consulted the cases dealing with toys and dolls in order to check both our eyes and our sense. Generally, it appears that in those cases where the courts have held the party asserting the copyright to have demonstrated infringement (or probable success on the issue of infringement), the similarity between the protected and the accused toys was greater and the differences less numerous and significant than is the case with the three pairs of dolls before us. *See, e. g., Dollcraft Industries, Ltd. v. Well–Made Toy Manufacturing Co.*, 479 F.Supp. 1105, 1117 (E.D. N.Y. 1978) (many features of accused stuffed lambs and bunnies the same as plaintiff's versions; "duplication in total of the plaintiff's expression;" "where differences do exist between the toys, they are minor.") (preliminary injunction issued); *R. Dakin & Co. v. Charles Offset Co.*, 441 F.Supp. 434 (S.D.N.Y. 1977) (similarities between stuffed monkeys so striking that no explanation other than copying credible; only slight changes made in accused dolls) (held infringement); *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895 (E.D.N.Y.

1977), *aff'd*, 578 F.2d 1369 (2d Cir. 1978) (defendant's stuffed turtle and plaintiff's identical in design, save for minor variances) (held infringement); *Goldman–Morgen, Inc. v. Dan Brechner & Co.*, 411 F.Supp. 382, 386 (S.D.N.Y. 1976); *Fisher–Price Toys v. My–Toy Co.*, 385 F.Supp. 218 (S.D.N.Y. 1974) (dolls strikingly similar in overall impression and as to many details; differences few and minor) (held infringement); *Royalty Designs, Inc. v. Thrifticheck Service Corp.*, 204 F.Supp. 702 (S.D.N.Y. 1962) (toy dog banks almost identical as to size, proportions, features and expressions, many details "carbon copies;" "[i]n every important respect defendant's banks are a direct verisimilitude of plaintiff's designs;" only minor and insignificant variations) (preliminary injunction issued). *But see Uneeda Doll Co. v. Regent Baby Products Corp.*, 355 F.Supp. 438, 450–51 (E.D.N.Y. 1972) ("aesthetic impression is not the same . . . [n]or are the differences only such that an ordinary observer would be disposed to overlook them unless he set out to detect the disparities" but "fact of copying is plain.") (preliminary injunction issued). We note that we have been unable to find any cases in this Circuit where a male doll has been held to infringe a female doll, or vice versa.

In other toy cases claims of infringement have been rejected where only the idea but not the expression has been appropriated, *Uneeda Doll Co. v. P & M Doll Co.*, 353 F.2d 788 (2d Cir. 1965) (copying limited to abstract idea of doll, on a red and white striped pole, in display box); or where the total effect of the toys differed despite similarities as to "standard doll features," *Ideal Toy Corporation v. Fab–Lu Ltd., supra*, 360 F.2d at 1023 (*but see* opinion on remand, 261 F.Supp. 238 (S.D.N.Y. 1966) (held infringement)). *See also Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 986 (S.D.N.Y. 1980)(competing Santas have something of the same aesthetic appeal due to features common to all Santas but facial features different)(held no infringement); *Ideal Toy Corp. v. Kenner Products*, 443 F.Supp. 291 (S.D.N.Y. 1977) ("Star Team" figures held not substantially similar to

"Star Wars" characters; theme but not expression copied) (preliminary injunction denied). In our view, the three pairs of dolls before us fit into this category of cases.

Although the issue of substantial similarity is clearly a factual one, it was entirely proper for Judge Motley to hold that Tomy is not entitled to go to trial on the issue of infringement. For where both the plaintiff's and defendant's works are before the court, "the court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." 3 Nimmer § 12.10 at 12–69. On appeal "where as here, the determination of similarity rests solely on a comparison of the works in issue rather than on the credibility of witnesses or other evidence only for the factfinder, 'we are in as good a position as the trial judge' to determine the issue." *Reyher v. Children's Television Workshop, supra,* 533 F.2d at 90, *quoting Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., supra,* 490 F.2d at 1093. Since we have determined, as a matter of law, that there is no substantial similarity as to any of the three pairs of dolls, we affirm the district court's dismissal of the doll counterclaims.

## UNFAIR COMPETITION

Tomy's ninth and final counterclaim alleges that Durham has engaged in unfair competition under the Lanham Act and the common law. Our study of the toys and their packaging compels the conclusion that this counterclaim was properly dismissed by the district court. In regard to the five pairs of miscellaneous toys (the two pairs of games and the three pairs of dolls), the absence of substantial similarity leaves little basis for asserting a likelihood of consumer confusion or palming off–the dangers of which Tomy complains–and the manner in which the toys are displayed for retail sale eliminates such a possibility entirely. Pass the Nuts, is packaged in a black, tan and white display box; the word "Tomy" and the phrase "Pass–the–Nuts" appear on all six sides. Durham's accused game is housed in an all black box on which various Disney characters, as well as the names "Walt Disney," "Mickey Mouse," "Durham" and "Peanut Putter" are prominently featured on all six sides. Similarly, the coloring and the artwork of the respective Drive Yourself Crazy and Star Ship packages make them easily distinguishable at a glance. Tomy's two infant dolls are packaged in brown boxes featuring the trademark "Kid–A–Longs;" Durham's infant dolls are sold in red bubble packages on which the "Mini–Winders" trademark and the Durham name are clearly marked. Both robots are displayed in bubble packages but on each the artwork and coloring are distinctive and the name of the toy ("Rascal Robots" or "Star Mission Mini–Winder") is written in letters almost as large as the toy itself.

The miscellaneous toys themselves, as packaged, will not support a determination of unfair competition. Thus even if we assume for purposes of this appeal that Tomy could demonstrate secondary meaning at trial, since likelihood of consumer confusion could not be established Durham was entitled to summary judgment. *See Vitarroz Corp. v. River Brand Rice Mills, Inc.,* 266 F.Supp. 981, 983 (S.D.N.Y. 1967) (on motion for summary judgment in unfair competition suit, court may determine absence of likelihood of confusion as a matter of law).

In regard to the three Disney characters, Tomy cannot achieve by an unfair competition claim what it failed to achieve under its copyright claim and therefore the copying of its Disney figures is legally irrelevant. Section 301(a) of the Copyright Act of 1976 provides:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright, as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or un-

published, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). To the extent that Tomy's unfair competition claim seeks protection against Durham's copying, it is a claim based on a right equivalent to "exclusive rights within the . . . scope of copyright." As such, it is defeated by Section 301(a).[15] Insofar as this unfair competition claim rests on similarity of packaging, it likewise must fail. Although both Tomy and Durham sell their Disney figures in bubble packages, these packages differ as to size, shape, artwork and color, and all are clearly labelled with their respective trademarks and company names.

The judgment of the district court is affirmed.

---

**15.** As we have determined that Tomy's Disney figures are not "original works of authorship," one might question whether Congress intended to preempt equivalent state–law rights for works, such as Tomy's, which lack sufficient originality to qualify for protection under the Copyright Act. The House Report, however, *supplies the answer:*

As long as the work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from

protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify . . . .

H.Rep.No. 1476, 94th Cong., 2d Sess. 131 (1976), U.S. Code Cong. & Admin. News 1976, p. 5747 (reprinted in 4 Nimmer App. 4). Thus, the Copyright Act of 1976 preempts any state–law *protection of Tomy's Disney figures* against copying by Durham. *See* 1 Nimmer § 1.01[B][2].