Forest HART, Sculptor; Thomas Ray d/b/a Hartforms; Archie Phillips; Research Mannikins; Joseph M. Kish, formerly doing business as Rocky Mountain Forms; Jim Allred Taxidermy Supply; Foster Taxidermy Supply; Martin Industries; Matt Thompson Taxidermy and Supply Company; Precision Mannikins, Inc.; Joe Coombs Classics, Inc., Plaintiffs,

v.

DAN CHASE TAXIDERMY SUPPLY COMPANY, INC., Defendant.

No. 93–CV–345.

United States District Court, N.D. New York.

June 30, 1997.

Hancock & Estabrook, Syracuse, NY, for Plaintiffs; Michael Oropallo, of counsel.

Trapani & Molldrem, Syracuse, NY, for Defendant; Bernhard P. Molldrem, Lawrence P. Trapani, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

In the underlying action, Plaintiffs, who are various designers of taxidermy mannequins (hereinafter "forms" or "mounts"), brought an action against the Defendant alleging copyright infringement, Lanham Act violations, and various state law violations premised on allegations that Defendant copied Plaintiffs' animal taxidermy forms. This Court held an evidentiary hearing on May 1 and 2, 1995 to determine the copyrightability of the Plaintiff's forms. The Court held that the vast majority of the Plaintiff's animal forms contained enough artistic detail to be considered copyrightable. *Forest Hart,* 884 F.Supp. at 77. However, with respect to Plaintiff's fish forms, the Court concluded that they were not copyrightable because there were so few ways to express the idea of a realistic fish body, that the expression merged with the idea.[1] *Id.* at 76–77. Accordingly, the Court dismissed the Plaintiffs' claim as to the eight fish forms and proceeded to trial on the remaining animal forms.[2]

The Plaintiffs appealed the Court's ruling on the eight fish forms to the Court of Appeals for the Second Circuit. In a decision dated June 26, 1996, the Second Circuit vacated this Court's decision and remanded the matter back for a rehearing. Presently before the Court is the Second Circuit remand of this Court's decision. *Forest Hart v. Dan Chase Taxidermy,* 884 F.Supp. 71 (N.D.N.Y. 1995), *vacated and remanded,* 86 F.3d 320 (2d Cir.1996). The Court of Appeals found that this Court did not establish a "detailed and realistic" basis for finding "merger" with respect to the fish forms, and suggested the consideration of additional evidence. This Court thereafter allowed the submission of additional briefing by the parties and on October 4, 1996, the Court held a hearing to consider any additional evidence.

### Discussion

#### 1. The Second Circuit Decision

In this Court's original decision, the doctrine of "merger" was considered in determining the "copyrightability" of Plaintiffs' fish forms. *Id.* at 75. The Court considered it in this context because merger contemplates the inability to distinguish idea and expression. Because a fundamental principal of "copyrightability" is that ideas are not copyrightable, *see* Copyright Act, 17 U.S.C. § 102(b), it logically follows that an expression which merges with the underlying idea is likewise not copyrightable. The Second Circuit, however, expressed their strong preference that the doctrine of "merger" be considered in a separate (and subsequent) "infringement" inquiry, rather than in the "copyrightability" context. 86 F.3d at 322. The stated reason for this preference is that "[a] court will normally have a 'more detailed and realistic basis' for evaluating the identity between idea and expression if it has all the contested forms of expression before it." *Id.* The Court of Appeals reasoned that a comparison of Plaintiffs' fish forms with those of the Defendant, in addition to "admitted originals by other carvers," would yield a more detailed and realistic basis on which this Court could find that "all realistic fish forms, no matter how artistic they might be, will necessarily be 'substantially similar.'" *Id.* (citing *Durham Indus. v. Tomy Corp.,* 630 F.2d 905, 916 (2d Cir.1980)). Thus, the Second Circuit held that this Court invoked the doctrine of merger prematurely. *Id.*

---

**1.** Because of the large number of fish forms implicated in the complaint, the parties entered into a stipulation which limited the fish forms at issue to eight models: BASS 133, BASS 143, BASS 245, TTDL 42, TTDL 46, SL 001, BR 1005, and BR 1020 (Defendant's forms). Plaintiffs' corresponding forms were AP 60, AP 66, AP 74, TR 21, TL 32, CL 14, BL 68, BR 91, respectively.

The parties agreed that the remaining fish forms would be reviewed based on the Court's decision on the eight forms at issue. (Stip.Dock. No. 56).

**2.** Prior to trial, the parties reached settlement as to the remaining mannequins.

While admittedly it was not readily apparent on the record before the Court of Appeals, this Court did closely examine the various proffered fish forms of both the Plaintiffs and the Defendant before rendering its original decision. Additionally, the Court now has reviewed a wide variety of submissions by the parties, including additional fish forms by third party carvers, trade magazines, and brochures. Having now considered this broad and varied evidentiary base, the Court will now attempt to articulate more clearly the basis for its findings with respect to the doctrine of merger.

## 2. The Doctrine of Merger

The doctrine of merger holds that an "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection of the idea itself." *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir.1991). In terms of the fish forms in this case, the Court must determine from the evidence whether "the particulars of all fish mannequins are dictated by the very notion of a lifelike fish." *Forest Hart*, 86 F.3d at 323.

Ordinarily, when the Court evaluates the issue of infringement, it asks whether an "ordinary observer" could look to the artistic expressive elements of the fish forms in question and conclude that the Defendant's forms are "substantially similar." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir.) *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Merger is found, however, where *all* expressions of the artistic, expressive elements of the fish forms are necessarily substantially similar. In such a case, Plaintiffs' works would not be protectable.

Plaintiffs argue that they are not seeking protection of an idea, but of their particular artistic expression of that idea. They assert that there are an infinite variety of ways to express a realistic fish. For example, a large mouth bass could be eighteen inches long and twelve inches in girth, or sixteen inches long with a fourteen inch girth. Further, a bass could be swimming with its tail to the left, or with its tail up, jumping with a right turn, "sipping" or feeding on insects, or many other "poses."

In evaluating whether idea and expression merge, it is important to define the precise "idea" in question, and the actual original "expression" involved. Here, the "idea" is to create a form, that when mounted with the skin and head of a fish carcass, gives the appearance of a "life-like" fish. In light of this "idea," the Court looks to the various fish forms to determine how this "idea" is originally expressed. The fish forms in question are rather amorphous masses, generally resembling the body of a fish, minus the head, tail and fins. Much of the detail of these fish forms is in the head area of the forms. This detail, however, is not seen once the fish carcass is mounted on the forms. On the front of the fish form is a series of contours and grooves utilized to "lock" the skull of the fish on to the mount. With the exception of the pectoral fin butt, a small protruding bump on the lower front of the forms which pops out the pectoral fin, the front of the forms do not impact the appearance of the mounted fish, as the individual skull of the actual fish determines the general shape, appearance, and "expression" of the head of the fish. Likewise, the body of the fish forms contain a very general three-dimensional appearance of a fish body without the tail or fins. The dorsal and pelvic areas of the body contain anatomical bulges in the appropriate areas of the fish.

Other than the girth of the midsection, the "expressive" difference in appearance of the various forms appears to be the "cant" of the fishes' tail. Some forms have the tail bent to the right and some to the left, with varying degrees of an upward or downward cant. Based on these observations, the Court finds that the general proportions and features of the fish forms are dependant on the proportional size of the fish in question. Likewise, the majority of the expressive details of the mounted fish depend on the size and shape of the fishes' skull, the color and consistency of the scales, and the fins and tail, none of which relate to the internal fish mount. Thus, the only arguable expressive choices for the carvers that are visibly manifested in

any significant way in the finished fish is the cant or "swish" of the tail.

In light of the indicated expressive differences, the next consideration is whether the various forms are "substantially similar." A comparison of the Plaintiffs' and the Defendant's fish forms reveals that while not exactly the same, the forms are similar in general appearance, proportion, and cant of the tail.[3] In addition, however, the Court finds that the fish forms from independent carvers are similar in the same manner. For example, Plaintiffs' largemouth bass, HP 74, is the same general size as Defendant's BASS 245. Their tails have the same general inward cant, however, Defendant's model has a more pronounced upward tilt to the tail. Additionally, the lower part of the body of the Defendant's fish is more detailed and broader than the Plaintiffs' model. An examination of the independent carver's models of the same size bass, Chandler model 17* 17(R) and Anderson model R130–170 (Guliano Aff. Ex. 4, 5), yield similar observations. Both these models are similar in proportion, appearance, and tail cant to both the Plaintiffs' and the Defendant's model. The Chandler model, however, has a slight back-curve to the tail and a less pronounced pectoral fin butt. The Anderson model is very similar to the Plaintiffs' model, yet its dorsal bulge is slightly less pronounced. In sum, while all four fishes are substantially similar in general appearance, upon close inspection, each is slightly different in an unobtrusive way. This finding is consistent with each of the eight fish forms at issue in this action.

The remarked similarity in appearance of the independent carvers' fish forms, the Defendant's forms and the Plaintiffs' models demonstrate that there are limited options available to portray the curve of the finished fishes' tail. Because there are so few expressive choices for these forms, affording copyright protection to the Plaintiffs' fish forms would necessarily afford protection to the idea of replicating a realistic looking fish itself. Thus, based on this merger of idea and expression, the Court finds that Plaintiffs' eight fish forms are not protectable. Accordingly, Plaintiffs' remaining claims must be dismissed. Therefore, it is hereby

ORDERED that Plaintiffs' remaining claims as to the eight fish forms in question are DISMISSED for the reasons stated herein.

**IT IS SO ORDERED.**

---

**3.** Plaintiffs argue that in some cases Defendant's forms are exact copies of Plaintiffs' models. Based on a close inspection of the eight forms stipulated to, the Court finds this assertion to be erroneous. Plaintiffs attempted at oral argument and in their later submission to substitute form TTDR 41 for form TTDR 42, as the alleged infringing version of Plaintiffs' exhibit 137 (TR 21), arguing that TTDR 41 is an exact copy of the Plaintiffs' TR 21. The Defendants vigorously object to such a late substitution. The Court finds this dispute to be irrelevant because even if the Plaintiffs' substitution were allowed, the Court still finds, contrary to Plaintiffs' contention, that neither TTDR 41 nor TTDR 42 is an exact replica of TR21.