MEDIAS & COMPANY, INC., a Colorado corporation, Plaintiff,

v.

TY, INC., a Delaware corporation, Defendant.

and

TY, Inc., a Delaware corporation, Counterclaimant,

v.

Medias & Company, Inc., a Colorado corporation, Counterdefendant.

No. Civ.A. 99–D–1869.

United States District Court, D. Colorado.

July 28, 2000.

Gayle L. Strong, Vinton, Nissler, Allen & Vellone, Denver, CO, for plaintiff.

John P. Craver, Kurt A. Horton, John M. Palmeri, White & Steele, Denver, CO, A. Sidney Katz, James P. White, Laurie A. Haynie, Louise T. Walsh, Welsh & Katz, Ltd., Chicago, IL, for defendant.

## ORDER

DANIEL, District Judge.

THIS MATTER is before the Court on Defendant–Counterclaimant Ty's Motion for a Preliminary Injunction filed December 13, 1999; Motion for Leave to File Supplementary Exhibit in Support of Its Motion for Preliminary Injunction filed March 3, 2000; Plaintiff–Counterdefendant Medias' Objection to Ty's Violation of the Parties' Stipulation Regarding Evidence, and Supplementary Citations filed January 18, 2000; and Motion for Leave to Withdraw Exhibits and Submit Supplementary Exhibits filed May 2, 2000. After a careful review of the law and facts applicable to the instant case, I find that the Defendant–Counterclaimant's Motion for a Preliminary Injunction must be granted in part and denied in part; and the relief requested in the Plaintiff–Counterdefendant's objection, motion for leave to exchange exhibits, and Defendant–Counterclaimant's motion for leave to file supplementary exhibits must all be denied as moot.

## BACKGROUND

Defendant–Counterplaintiff Ty, Inc. ("Ty") is the originator of the popular Beanie Babies plush toys. In May of 1994, one of the first Beanie Babies toys sold by Ty was a yellow duck with a bright orange bill and bright orange feet named "Quackers." The original Quackers had no wings. *Motion for Preliminary Injunction*, Ex. C. Thereafter, Ty began selling Quackers with wings. *Id.* at Ex. D. Ty obtained the copyright registration for its original Quackers Beanie Baby effective June 3, 1994. *Id.* Ex. E.

In 1998, Ty introduced a new line of plush toys called "Beanie Buddies." These were larger versions of the Beanie Babies, and made of softer fabric. Beginning in 1998, Ty made and sold a Beanie Buddy named Quackers, both with and without wings. *Id.* at Ex. F. Ty obtained a copyright registration for the Beanie Buddy Quackers effective October 13, 1998. *Id.* at Ex. E. Ty also obtained copyright registrations for its Beanie Baby chameleon and iguana toys effective February 13, 1998. *Id.* Medias created its plush toy twin ducklings in June of 1998.

Ty alleges that Plaintiff–Counterdefendant Medias & Co., Inc. ("Medias") has copied Ty's Quackers by selling plush yellow ducks with bright orange bills and feet—one without wings ("Puddles") and one with wings ("Puddles Two"). *Id.* at Ex. J. Ty also contends that Medias is selling a third infringing plush animal, "Raindrop," allegedly a copy of Ty's plush chameleon named "Rainbow." *Id.* at Ex's. L, M. In addition, Medias is selling companion children's books to these toys, which Ty maintains contain illustrations that infringe Ty's copyrights in its Beanie Babies plush toys. Medias sent actual Ty Beanie Babies toys to the illustrator of the books to use as models for the illustra-

tions, *Affidavit of Alan K. Lovejoy of October 25, 1999,* at ¶¶ 5, 6, 8, 11 (attached as Ex. N of Motion for Preliminary Injunction), and began marketing the book-toy sets in June 1999.

Medias asserts that its mission is to create stories that will not only be fun to read, but also teach children about animals and establish a connection between the child and an animal. Ty's marketing plan is to withdraw, or "retire" certain styles of Beanie Babies from the market at various times. The Beanie Babies toys at issue in this case have been withdrawn by Ty from the consumer retail market, and are only available on the secondary market of Beanie Babies collectors.

In this case, Medias, as the Plaintiff, is seeking a declaratory judgment of non-infringement or copyright and a determination of copyright misuse under the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.;* a judgment of non-dilution of trademarks under 15 U.S.C. § 1051 *et. seq.;* and a finding of fair and lawful competition under 15 U.S.C. § 1051 *et. seq.* and the common law of the State of Colorado. Conversely, as a Defendant–Counterplaintiff, Ty is seeking a preliminary injunction.

### ANALYSIS

I. *Motion for a Preliminary Injunction.*

1. *Standard.*

■ The Copyright Act permits a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Autoskill, Inc. v. Nat'l Educ. Support Systems,* 994 F.2d 1476, 1487 (10th Cir.1993) (citing 17 U.S.C. § 502(a)). A district court judge may grant a preliminary injunction if the moving party demonstrates the following: (1) substantial likelihood that the movant will prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed in-

junction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Id.* (citing *Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1270 (10th Cir.1988)). A preliminary injunction granted by a district court judge will not be set aside "unless the district court abuses its discretion, commits an error of law, or is clearly erroneous in its preliminary factual findings." *Id.* (citing *Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1270 (10th Cir.1988)). I address each of the above-mentioned factors below.

2. *Likelihood of Success on the Merits.*

■ To demonstrate a substantial likelihood of success the movant is required to present a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought. *Id.* (citing *Continental Oil Co. v. Frontier Ref. Co.,* 338 F.2d 780, 781 (10th Cir.1964)). The movant is not required to show to an absolute certainty that it has a right to prevail on the infringement claim at trial. *Id.* Instead, "[w]hen the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (citation omitted).

■ To prove copyright infringement a plaintiff is required to show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.* (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). As outlined below, although Ty has established these elements with respect to the Beanie Baby Quackers plush duck Quackers, Medias did not copy the original constituent elements of Ty's chameleon Raindrop.

## A. Ownership of a Valid Copyright.

■ A certificate of registration of a copyright "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (1999). "By presenting a registration certificate a party establishes the validity of the copyright prima facie and the burden to dispute the validity of the copyright then shifts to the party challenging it." *Autoskill, Inc.*, 994 F.2d at 1487 (citing *Harris Market Research v. Marshall Mktg. & Communications, Inc.*, 948 F.2d 1518, 1526 (10th Cir.1991)).

### i. The Plush Ducks.

Ty obtained the copyright registration for its original Quackers Beanie Baby effective June 3, 1994. *Motion for Preliminary Injunction*, Ex. E. Ty's larger version of its duck, Beanie Buddy Quackers, was submitted for copyright registration in October 1998 and was first published October 1, 1998. Medias created its plush toy twin ducklings in June of 1998. Therefore, Medias could not have had access to or copied Ty's Beanie Buddy Quackers. Thus, the basis of Ty's copyright infringement claim is on Beanie Baby Quackers. With respect to Beanie Baby Quackers, Ty has presented a certificate of registration. Therefore, Ty has established the validity of its copyright prima facie and the burden to dispute the validity of the copyright shifts to Media. Medias has no dispute with Ty's copyright in Beanie Baby Quackers. Consequently, Ty has satisfied its initial burden on the ownership element with respect to the plush ducks.

### ii. The Plush Chameleons.

Although the parties disagree regarding the circumstances surrounding Ty's modifications of its chameleon and iguana copyright registrations, it is undisputed that Ty obtained both of these copyright registrations effective February 13, 1998. *Motion for Preliminary Injunction*, Ex. E. Consequently, Ty has satisfied its initial burden

on the ownership element on the plush chameleon.

### iii. The Illustrations.

Ty asserts that Medias' illustrations in its books infringe on Ty's plush duck horse, lamb, pig and iguana. As noted above, Ty has satisfied its initial burden with respect to the duck and the chameleon. Regarding the plush horse, lamb, and pig, Ty has copyright registrations for each of these toys. *See id.* Medias has expressed no dispute with the validity of Ty's copyright in each of these toys. Consequently, Ty has satisfied its initial burden on the ownership element as to each of these toys. As I find that Ty has established ownership of a valid copyright as to each of the plush animals, I now consider the issue of whether Medias copied original elements of the works.

## B. Copying of Original Constituent Elements of the Work.

■ "In a copyright infringement action a 'plaintiff may prove defendant's copying either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiffs' copyrighted work, and (2) defendant's work is substantially similar to the plaintiff's copyrightable material.'" *Autoskill, Inc.*, 994 F.2d at 1489 (citations omitted). These two types of circumstantial evidence of infringement are accepted because direct evidence of copying is rarely available. *Id.*

■ On access, a plaintiff may meet his initial burden by showing that the defendant had a "reasonable opportunity to view" or "opportunity to copy" the allegedly infringed work. *Id.* Here, Medias sent actual Ty Beanie Babies toys to the illustrator of the books to use as models for the illustrations. *Affidavit of Alan K. Lovejoy of October 25, 1999*, at ¶¶ 5, 6, 8, 11 (attached as Ex. N of Motion for Preliminary Injunction). Additionally, Medias used unauthorized photographs of Ty's Beanie Babies toys in its advertisements.

*Motion for Preliminary Injunction*, Ex. I. (Letter from Welsh & Katz, Ltd. to Medias demanding that Medias immediately refrain from using photographs of Ty's products in their promotional literature). Thus, Medias had access to Ty's product. Therefore, the element of access is established. Consequently, the question of whether Medias copied Ty's product turns on whether Medias' products at issue are substantially similar to Ty's products at issue.

■ To make the "substantially similar" determination, courts in this circuit have found it useful to apply the " 'abstraction-filtration-comparison' " test. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir.1996). "At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar." *Id.* at 1284–85.

#### i. *Abstraction and Filtration Analysis.*

■ "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1999). "Because the idea/expression distinction is somewhat elusive, courts often adopt an ad hoc approach, eschewing the application of any bright line rule or any clear formula." *Id.* (citations omitted). In differentiating between an idea and a specific form of expression, however, "it is important to remember that copyright law seeks to achieve a proper balance between competition based on public ideas and incentive to produce original work. Hence, to the extent that the idea and the particular expression cannot be separated, the work cannot be protected by a copyright because protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner." *Id.* "Indeed, 'where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying.' " *Id.* (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980)). With this standard in mind, I address each toy in turn.

In the present case, the idea of a plush duck or a plush chameleon is not protectable. Neither are the facts that Ty's duck has a bill, bright yellow plush fabric for the head and body, two webbed feet, and two eyes; and that Ty's chameleon has protruding eyes four feet and a tail. The particular way in which Ty expresses the idea of a duck or a chameleon, however, is protected. *See, e.g., Kurt S. Adler, Inc. v. World Bazaars, Inc.*, 897 F.Supp. 92, 95 (S.D.N.Y.1995) ("[The] stereotypical features of a Santa notwithstanding, the Court finds that, from an artistic standpoint, there is, indeed, a virtually infinite variety of ways to express the idea of Santa."). In the case of Ty's Beanie Baby Quacker, this particularized expression would include the unique shape of Quacker's head and body, combined with bright yellow plush fabric for the head and body, combined with a bright orange, less plush, flared bill, combined with the same bright orange, less plush webbed feet attached directly to the body without intervening legs; combined with two round black shiny eyes made of hard plastic, placed on the front of the face rather than the sides of the head; combined with eyebrows made out of black thread; combined with no wings, or in the case of Quacker with wings, combined with a modified triangular wings attached on either side of the body just below the neck.

In the case of Ty's Beanie Baby Rainbow, this particularized expression would

include Rainbow's uniquely shaped body and head; combined with the particular dimensions of a spiral tail; combined with truncated curved feet; combined with the particular collar placed all the way around the back of the neck and forming a peak toward the top; combined with the mouth formed by a thin line of contrasting fabric at the base of the head; combined with a fabric tongue; combined with the particular manner of expressing protruding eyes, with the plush rim and a hard plastic center.

### ii. *Comparison Analysis.*

██ A substantial similarity analysis concludes with a comparison of portions of the alleged infringer's works with the portions of the complaining party's works which are determined to be legally protectable under the Copyright Act. *Autoskill, Inc.*, 994 F.2d at 1490. After filtering out the protectable elements, the Court applies the "ordinary observer" test to determine if the protectable portions are substantially similar. *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1288. This is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis. *Id.* The traditional test for substantial similarity is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Id.* (citation omitted). The essence of this test is whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (citation omitted). The touchstone of the analysis is the overall similarities rather than the minute differences between the two works. *Id.* (citation omitted).

██ In this case, when comparing Ty's Beanie Baby Quackers to Medias' Puddles and Puddles Times Two, I find substantial similarities. But for the type of material used on the ducks,[1] the size and the nostrils on Puddles and Puddles Times Two, Medias' plush ducks significantly resemble Ty's Quackers. Indeed, the differences are minute. The plush ducks from both parties have similar unique head and body shapes, similar bright yellow plush fabric for the head and body, similarly shaped and styled bright orange, less plush, flared bill, combined with the same bright orange, less plush webbed feet attached directly to the body without intervening legs; similar round black shiny eyes made of hard plastic, placed on the front of the face rather than the sides of the head; similar eyebrows made out of black thread; and, in the case of Quacker with wings and Puddles Times Two, similar modified triangular wings attached on either side of the body just below the neck. An ordinary observer would regard their aesthetic appeal as the same and assume that Medias' Puddles and Puddles Times Two are simply larger versions of Ty's Beanie Baby Quackers and Beanie Baby Quackers with Wings. Thus, Medias' Puddles and Puddles Times Two are so similar to Ty's Beanie Baby Quackers and Beanie Baby Quackers with Wings that an ordinary reasonable person would conclude that the Medias unlawfully appropriated Ty's protectable expression by taking material of substance and value. Consequently, the plush ducks are substantially similar.

██ In terms of the chameleon, however, I reach a different conclusion. Medias' Raindrop and Ty's Beanie Baby Rainbow have differently shaped heads and differently styled eyes. Ty's Beanie Baby Rainbow has a tongue, whereas Medias' Raindrop has none. Additionally, while Ty's Beanie Baby Rainbow is under filled and poseable, Medias' Rainbow has substantial-

---

1. Puddles and Puddles Times Two are composed of a fuzzier material than Quackers and

Quackers with Wings.

ly more filling and is plump. Finally, Medias' Raindrop has a distinctive colorful rainbow pattern sewn on its back, while Ty's Beanie Baby Rainbow has none. Taking all of these facts into consideration, I find that an ordinary observer would not perceive the aesthetic appeal of Medias' Raindrop and Ty's Beanie Baby Rainbow as the same. Therefore, the two chameleons are not substantially similar.

In terms of the illustrations, Medias' *Puddles Times Two* book contains illustrations of the ducks at issue. As I have previously noted, the parties respective plush ducks are substantially similar. Additionally, the illustrations depict a duck with the same shaped beak, including what appears to be a border or seam around the edge, as Ty's Beanie Baby Quackers. Furthermore, the illustrations depict a yellow duck with eyebrows and with only a portion of the webbed feet that protrudes from the body. These features are also part of Ty's unique expression in its plush duck Quackers which are not present in real ducks. Therefore, it follows that Medias' illustrations of these ducks are substantially similar to several of Ty's plush ducks. Thus, they are also copies of Ty's products. Consequently, under the "abstraction-filtration-comparison" test, the illustrations in Medias' *Puddles Times Two* book are substantially similar to Ty's products at issue.[2]

Medias' *Rainbows in the Forest* book only contains illustrations of Medias' Rainbow chameleon. As previously stated, I find that Medias' Raindrop and Ty's Beanie Baby Rainbow are not substantially similar. It follows, therefore, that illustrations of Medias' Rainbow chameleon cannot be substantially similar to Ty's Beanie Baby Rainbow. Consequently the illustrations in Medias' *Rainbows in the Forest* book are not substantially similar to Ty's products at issue.

As Ty has shown (1) that Medias had access to Ty's copyrighted work and (2) that, at least in terms of the plush ducks, Medias' work is substantially similar to Ty's copyrightable material, Ty has proven Medias' copying. Therefore, it follows that, as Ty has shown (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original, Ty has proven copyright infringement. Consequently, Ty has shown a likelihood of success on the merits in this case, and satisfied the first requirement of a preliminary injunction.

### 3. *The Irreparable Injury Standard.*

■ There is a prevailing view in the circuits that a showing of a prima facie case of copyright infringement or of a reasonable likelihood of success on the merits usually raises a presumption of irreparable harm for preliminary injunction purposes. *Autoskill, Inc.*, 994 F.2d at 1488, The Tenth Circuit, however, has explicitly joined this view. *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1288–89. ("Because the financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill, we join the overwhelming majority of our sister circuits and recognize a presumption of injury at the preliminary injunction stage once a copyright infringement plaintiff has demonstrated a likelihood of success on the merits."). In this case, Ty has shown a likelihood of success on the merits in this case, and has satisfied the first requirement of a preliminary injunction. This raises a presumption of irreparable harm for preliminary injunction purposes. Hence, Ty will suffer irreparable injury if a preliminary injunction is not issued and the second requirement for a preliminary injunction is satisfied.

---

**2.** Because the Court has found that the ducks included in the illustrations is dispositive as to whether the illustrations in Medias' books are substantially similar to Ty's products at issue, the Court does not reach the issue of the other animals included in the illustrations of Medias' book *Puddles Times Two* are substantially similar to Ty's products.

### 4. *Balance of Hardships.*

The potential injury to an allegedly infringing party caused by an injunction merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement. *Autoskill, Inc.,* 994 F.2d at 1498. Indeed, "placing too much weight on this factor would reward infringers." *Id.* Here, any injury to Medias caused by the preliminary injunction would be a result of Medias ceasing the allegedly infringing conduct. Hence, this merits little equitable consideration. Consequently, the balance of the harms weighs in Ty's favor.

### 5. *The Public Interest.*

Medias asserts that it's mission is to create stories that will not only be fun to read, but also teach children about animals and establish a connection between the child and an animal. Thus, Medias contends that the public would be disserved if Ty is permitted to stifle artistic creativity and Medias ability to enhance the reading experience of children. I disagree with Medias' position because this interest is not the public interest at issue in a preliminary injunction case.

In copyright cases, the Tenth Circuit has held that "the public interest is the interest in upholding copyright protections." *Autoskill, Inc.,* 994 F.2d at 1498. Therefore, "this factor normally weighs in favor of the issuance of an injunction." *Id.* Consequently, Medias' position is without merit.

II. *Medias' Objection to Ty's Violation of the Parties Stipulation Regarding Evidence; Motion for Leave to Withdraw Exhibits and Submit Supplementary Exhibits; and Ty's Motion for Leave to File Supplementary Exhibit in Support of Its Motion for Preliminary Injunction.*

In its Objection, Medias requests that I strike those exhibits tendered to the Court that are not in compliance to the parties' stipulation. Medias has also filed a motion for leave to withdraw exhibits and submit supplementary exhibits for the Court's consideration in the decision concerning the preliminary injunction. Finally, Ty has filed a motion for leave to file a supplementary exhibit in support of the preliminary injunction. As I have ruled on the Preliminary Injunction in this Order, I find that Medias' Objection, Medias' motion for leave to exchange exhibits, and Ty's motion for leave to file supplementary exhibits are all moot.

### CONCLUSION

I find that Medias' Puddles plush duck, Puddles Times Two plush duck and *Puddles Times Two* book infringe on Ty's copyrighted Beanie Baby Quackers. I also find, however, that Medias' Rainbow chameleon and *Rainbows in the Forest* book do not infringe on Ty's copyrighted Beanie Baby Raindrop. Consequently, for the above mentioned reasons, I grant in part and deny in part Ty's Motion for a Preliminary Injunction. I deny as moot the relief requested in Medias' objection, motion for leave to exchange exhibits, and Ty's motion for leave to file supplementary exhibits. Accordingly, it is

ORDERED that Defendant–Counterclaimant Ty's Motion for a Preliminary Injunction filed December 13, 1999 is GRANTED IN PART and DENIED IN PART. To the extent that it seeks to enjoin and restrain Medias from manufacturing, distributing, advertising, selling, and/or offering to sell the plush animals Puddles and Puddles Times Two, and the book *Puddles Times Two,* it is granted. Insofar as it seeks to enjoin and restrain Medias from manufacturing, distributing, advertising, selling, and/or offering to sell the plush animal Rainbow and the book *Rainbows in the Forest,* it is denied. It is

FURTHER ORDERED that Medias and each of its principals, officers agents, servants, employees, attorneys, and those persons under the control or in active concert or participation with Medias who

receive actual notice of this order by personal service or otherwise, are hereby enjoined and restrained, pending final resolution of the action or until further notice of this Court, from manufacturing, distributing, advertising, selling, and/or offering to sell the plush animals Puddles and Puddles Times Two, and the book *Puddles Times Two*. It is

FURTHER ORDERED that, pursuant to Fed.R.Civ.P. 65(c), Defendant–Counterclaimant Ty shall post a bond in an amount to be determined by the Court before this Preliminary Injunction takes effect. It is

FURTHER ORDERED that the hearing on Plaintiff's Motion for Leave to Withdraw Exhibits and Submit Supplementary Exhibits set for Tuesday, August 15, 2000 at 3:30 p.m. is VACATED as to that issue, but will occur for the limited purpose of the Court hearing arguments on the proper bond to be ordered. By **August 7, 2000,** the parties shall file statements on the bond to be set and the rationale for the amount which, among other things, takes into account the volume of product to be enjoined, the estimated value of the product, and any other commercial information that will aid the Court in deciding an appropriate bond. It is

FURTHER ORDERED that Plaintiff–Counterdefendant Medias' Objection to Ty's Violation of the Parties' Stipulation Regarding Evidence, and Supplementary Citations filed January 18, 2000; Motion for Leave to Withdraw Exhibits and Submit Supplementary Exhibits filed May 2, 2000; and Defendant–Counterclaimant Ty's Motion for Leave to File Supplementary Exhibit in Support of Its Motion for Preliminary Injunction filed March 3, 2000 are DENIED AS MOOT.